Robert GLADHILL; Harriet Gladhill and State Farm Mutual Automobile Insurance Company, a corporation, Subrogee of Robert Gladhill, Appellants,

v.

GENERAL MOTORS CORPORATION and Rockmont Motor Company, Appellees.

Robert GLADHILL; Harriet Gladhill and State Farm Mutual Automobile Insurance Company, a corporation, Subrogee of Robert Gladhill, Appellants,

v.

GENERAL MOTORS CORPORATION and Rockmont Motor Company, Appellees.

Nos. 83–1091(L), 84–1095.

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1984.

Decided Sept. 17, 1984.

Widener, Circuit Judge, filed a concurring and dissenting opinion.

Louis Fireison, Bethesda, Md. (Louis Fireison & Associates, P.A., and Daniel Blum, Bethesda, Md., on brief), for appellants.

Joseph G. Finnerty, Jr., Baltimore, Md. (John R. Metz, Piper & Marbury, Washington, D.C., and Donald R. Parshall, Jr., Detroit, Mich., on brief), for appellee General Motors Corp.

Delverne A. Dressel, Baltimore, Md. (Horn, Dressel & Bennett, P.A., Baltimore, Md., on brief), for appellee Rockmont Motor Co.

Before WINTER, Chief Judge, and WIDENER and PHILLIPS, Circuit Judges.

**HARRISON L. WINTER, Chief Judge:**

Plaintiffs appeal from the judgment entered on the jury's verdict for defendants in their products liability suit. Because we conclude that the district court failed to comply with circuit precedent in the selection of the jury, we reverse and direct that the case be retried before a properly constituted jury. We also rule on some of plaintiffs' other contentions where it is likely that they will arise on retrial.

### I.

In May of 1979, Robert and Harriet Gladhill purchased a 1980 Chevrolet Citation, one of the so-called "x-body" automobiles produced by General Motors Corporation. Plaintiffs took delivery of the Citation in November of 1979 and immediately began to experience problems with the automobile's braking system. The brakes would occasionally lock with only slight pressure on the pedal, causing the car to skid. Plaintiffs returned the automobile for servicing on at least two occasions in an attempt to remedy the problem. On both occasions, the dealer representatives failed to find any mechanical flaws in the brakes. In September of 1980, Robert Gladhill, while driving alone, collided with a utility pole. Mr. Gladhill sustained serious injuries and the automobile was destroyed.

The Gladhills filed suit in the Circuit Court for Montgomery County, Maryland alleging that the accident was the direct result of a latent design or manufacturing defect that caused the car's rear wheels to lock. The case was later removed to the district court and trial was held before a jury resulting in a verdict for the defendants.

Plaintiffs appeal entry of the adverse judgment alleging five errors arguably sufficient to warrant a new trial. We agree that a new trial is required.

### II.

The record reveals that the district judge refused to strike for cause a prospective juror who owned some amount of stock in General Motors Corporation. Plaintiffs were forced to use one of their peremptory challenges to disqualify the juror and now claim they were prejudiced because the number of their peremptory challenges was effectively reduced from three to two.

The rule to be applied where a juror is a stockholder of a party to a case to be heard by the jury was clearly established in this circuit in a case similar to this in all relevant factual respects. *Chestnut v. Ford Motor Co.*, 445 F.2d 967 (4 Cir.1971). There, in a products liability action against another automobile manufacturer, it was held that the district court committed reversible error when it refused to strike for cause a juror who was a stockholder of the manufacturer because plaintiff was required to use a peremptory challenge to eliminate the juror, thus effectively reducing the number of peremptory challenges to which plaintiff was entitled below the number fixed by law. "That a stockholder in a company which is party to a lawsuit is incompetent to sit as a juror is so well settled as to be black letter law." *Id.* at 971. Given the clarity of this rule as well as the absence of distinguishing circumstances between *Chestnut* and this case, precedent clearly dictates that a new trial is necessary for this reason alone. The fact that the juror in the instant case, after disclosing stock ownership also swore that such ownership would not destroy the juror's objectivity, is irrelevant. If, as is the law, the juror is legally disqualified from acting, the juror's analysis of his subjective qualifications is beside the point.

Defendants argue vigorously that the *Chestnut* rule should be abandoned. We do not doubt that were this a question of first impression in this circuit, defendants could mount a forceful argument that the modern context of corporate ownership and the diffuse investments of the American public should militate against a *per se* rule. But the question is not one of first impression. We think that *Chestnut* established a *per se* rule. As a single panel of this court, we lack authority to re-examine or to overrule *Chestnut* short of an intervening

Supreme Court decision warranting such action. There is no such decision. There is, however, a legislative enactment supporting the correctness of the *Chestnut* rule. In 1974 Congress amended 28 U.S.C. § 455 to direct that a judicial officer should disqualify himself in any proceeding in which "he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest ... in a party to the proceeding ..." 28 U.S.C. § 455(b)(4). Under § 455(e), the judge may not even accept a waiver of this disqualification from the parties. We read § 455(b)(4) to require a judge who is a stockholder in a party to a case to disqualify himself from participation in the case even when he is not the fact-finder. We would find it difficult to say, even if we were to address the question, that a less rigorous rule should apply to laymen who are chosen as jurors when they lack a lifetime of training in objectivity in the disposition of lawsuits.

Since this case must be retried, we turn to plaintiff's other contentions which are likely to arise anew.

### III.

Plaintiffs contend that the district court committed reversible error when it permitted defendants to display a video-taped demonstration of a braking test of the Chevrolet Citation when the circumstances under which the demonstration was conducted were not similar to those involved in the accident. The test, conducted by a General Motors test driver, involved causing one of the rear brakes to lock while the car was in motion. The record indicates that the accident in which Mr. Gladhill was injured occurred at night, on a hill sloping downwards, at a "sharp curve", "between the two elbows of the curve." By contrast, the videotaped demonstration was conducted at a General Motors test facility on a flat, straight, asphalt surface in daylight by an experienced test driver. Plaintiffs contend that this test amounted to an re-enactment of the accident and was improperly admitted because the conditions

of the re-enactment were not substantially similar to the incident as alleged in the complaint. *Hall v. General Motors Corp.,* 647 F.2d 175 (D.C.Cir.1980).

Defendants respond that similar circumstances are unnecessary because the test was not a re-enactment of the accident but rather a "demonstration of certain operating characteristics of the vehicle in question." In short, defendants sought to introduce the tape and testimony of the test driver to show that when a rear wheel on a Citation locks, the car continues to travel in a straight line. Defendants argue that films demonstrating physical principles underlying an expert's testimony are often admissible despite vast differences between the circumstances of the test and the circumstances of the events at the center of the lawsuit. *See, e.g., Young v. Illinois Central Gulf Railroad Co.,* 618 F.2d 332, 338 (5 Cir.1980) (film sought to be introduced through expert witness showing that car would be directed onto railroad track at crossing unless wheels turned to right was not a re-enactment and was improperly excluded).

Defendants are correct that demonstrations of experiments used to illustrate the principles used in forming an expert opinion are not always required to adhere strictly to the circumstances of the events at issue in the trial. *Brandt v. French,* 638 F.2d 209, 212 (10 Cir.1981). Nevertheless, we are persuaded that this entire test goes well beyond a mere demonstration of a physical principle. The jury was given a view of a Chevrolet Citation on a wide-open asphalt road traveling in a straight line with one of its rear wheels locked and a test driver in control. It is easy to understand why the jury might be unable to visualize plaintiffs' version of the events after this film. Indeed, the circumstances of the accident, as alleged, are so different from this test as to make the results largely irrelevant if not misleading. It is elementary physics that automobiles traveling downhill with their front wheels turned do not behave the same way with their brakes locked as those traveling on a flat surface

with their front wheels straight. Thus, we are persuaded that evidence of this test should be excluded entirely on retrial.* It is possible to call almost any evidence of this type "a demonstration to illustrate a principle" but when the demonstration is a physical representation of how an automobile behaves under given conditions, those conditions must be sufficiently close to those involved in the accident at issue to make the probative value of the demonstration outweigh its prejudicial effect. In this instance, the conditions were dissimilar in such fundamental and important respects that the risk of prejudice to plaintiffs outweighed the probative value of the evidence.

### IV.

Plaintiffs assert reversible error in the district court's failure to vacate the original judgment in light of evidence that defendants withheld a variety of documents during the discovery phase of the case. Because we are directing that a new trial should be given the plaintiffs, there is no need for us to pass on this issue. Plaintiffs now have available to them for use at retrial the information they claim was improperly withheld during the initial trial.

### V.

■ Plaintiffs also contend that the district court erred in allowing a police officer who arrived at the accident scene to give an opinion concerning the cause of the accident. We see no merit in this argument. Opinion testimony is properly admitted where the witness is qualified. Fed.R. Evid. 702. Whether a witness is qualified can only be determined by the nature of the opinion he offers. The Gladhills suggest that Sergeant Crittenden lacked "engineering background" or "specialized knowledge of automobiles" and that "he made no meaningful inspection of Gladhill's automobile" and "failed to inspect the brakes." Thus, they argue, the district court impermissibly allowed him to testify "as to his opinion of whether there was a defect in Gladhill's car."

■ However, Crittenden testified only that the accident resulted from "the failure to drive within a single lane," that it may have been caused by lack of familiarity with the vehicle or "some problem with the vehicle", and that he could not find any vehicle defect. We believe that Crittenden was qualified to make these statements, having investigated some 500 to 600 accidents. More important, Crittenden admitted during cross-examination that he had not inspected the brakes, and he never expressed any opinion regarding their condition. Thus, we are unable to see how plaintiffs' theory was unfairly undermined by the testimony when taken as a whole.

### VI.

■ Finally, plaintiffs assert reversible error in the district court's refusal to allow an amendment to the complaint to allege a cause of action for fraud against the dealership, Rockmont Motor Co. The disposition of a motion to amend is within the sound discretion of the district court and there must be some abuse of discretion to warrant reversal on this issue. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In this instance, the district court denied the motion largely because allowing the amendment at the time plaintiffs made their motion would have disrupted the trial schedule. There was no abuse of discretion in this ruling. Nevertheless, on retrial the considerations militating against allowing the amendment would no longer obtain. Thus, while we see no abuse of discretion in the previous denial, the amendment should be allowed on retrial in keeping with the provisions of

---

* At trial and before us, plaintiffs focus their argument on the admissibility of the videotape rather than the experiment as a whole, including oral testimony of the conduct of the test and the test results. Thus, in the absence of an objection, it is impossible to say that the district court erred by failing to exclude all evidence concerning the experiment. On retrial, however, we think a better approach would be to exclude all evidence generated by this experiment, including testimony pertaining thereto.

Fed.R.Civ.P. 15 requiring that leave to amend be "freely given".

REVERSED AND REMANDED.

WIDENER, Circuit Judge, concurring and dissenting:

I concur in the result as well as in all of the opinion except part V thereof. I respectfully dissent to parts of part V of the majority opinion.

According to the briefs of the parties, a part of the officer's testimony was that the accident could have been caused by "a gentleman who was unfamiliar with the car." That testimony was not based on anything Gladhill told the officer or any fact revealed by the officer's investigation. I think, therefore, that his conclusion to that effect was wholly speculative and could not have been based on any investigative expertise the officer might have possessed.

The officer's testimony that, to quote the majority opinion, "he could not find any defects" should not have been admitted, I think, because "he failed to inspect the brakes." The lawsuit was all about a claim of defective brakes and nothing else. The officer did not inspect the brakes. Although the officer may have been an expert on the subject, since he failed to inspect the brakes and brake malfunction was the only thing the lawsuit was about, his testimony from which it might have been inferred that the brakes did not malfunction was entirely without factual foundation.