905 F.2d 1529
 30 Fed. R. Evid. Serv. 343
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Wayne L. EVANS, Plaintiff-Appellant,
v.
Larry Edwin OLIVER, Defendant-Appellee.
 No. 89-1737.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 5, 1990.
Decided May 7, 1990.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Bluefield. Elizabeth V. Hallanan, District Judge. (CA-87-368-1)
 Norris Kantor, Katz, Kantor & Perkins, Bluefield, W.V. (Argued), for appellant; Wayne L. Evans, Katz, Kantor & Perkins, Bluefield, W.V., on brief.
 Randal Wade Roahrig, Princeton, W.V., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before WIDENER, MURNAGHAN and CHAPMAN, Circuit Judges.
 CHAPMAN, Circuit Judge:
 
 
 1
 Plaintiff Wayne Evans appeals the entry of a jury verdict attributing 55 percent negligence to him and 45 percent negligence to the defendant in a suit arising out of a traffic accident at an intersection. He asserts error in the admission of opinion testimony from defendant's expert, and in the court's refusal to charge certain jury instructions. Finding no error, we affirm.
 
 
 2
 * Plaintiff Wayne Evans filed suit against Larry Oliver, asserting jurisdiction based upon diversity of citizenship and seeking damages arising out of an automobile accident. After a jury trial, the district court entered judgment for Oliver based upon the jury's verdict that Oliver was 45 percent negligent and that Evans was 55 percent negligent. Under West Virginia's law of comparative negligence, a plaintiff whose negligence equals or exceeds the combined negligence of the other parties involved in an accident cannot recover in a tort action. Bradley v. Appalachian Power Co., 163 W.Va. 332, 256 S.E.2d 879, 887 n. 19 (1979). Evans appeals.
 
 
 3
 The accident occurred on March 24, 1987, shortly before 9 a.m. at the intersection of Augusta Street and Maryland Avenue in Bluefield, West Virginia. Evans was proceeding east along Augusta Street in a 1982 Ford LTD. Oliver was proceeding north along Maryland Avenue in a 1973 Chevrolet Blazer. Although Evans braked, his car skidded and struck the Oliver vehicle in the intersection. Both parties alleged that the other had entered the intersection against a red light. Oliver also alleged that if Evans had not been exceeding the speed limit of 25 miles per hour, he could have avoided the Oliver car. The only negligence alleged against Oliver was his failure to obey the red light. Implicit in the jury verdict that Oliver was negligent is a finding that Oliver was driving against the red light, and that Evans had the green light. The jury verdict established that Evans was also negligent and that Evans' violation of the speed limit was a proximate cause of the accident.
 
 
 4
 Experts for both parties testified as to Evans' speed. Defendant's expert, Dr. Smith, conducted a braking experiment on Augusta Street using a 1986 Model Ford Thunderbird. Dr. Smith and his assistant drove the Thunderbird and used an accelerometer, a mechanical device, to measure the friction between the road and the vehicle. From this coefficient of friction, Dr. Smith opined that Evans' car speed prior to skidding was 38.8 m.p.h. In contrast, plaintiff's expert, Dr. Haynes, opined that Evans' speed was between 29.4 and 33 m.p.h. Dr. Haynes used a lower coefficient of friction to calculate Evans' speed, which he derived from the investigating officer's measurements of skid marks rather than a braking experiment.* Both experts testified that, had not Evans exceeded the speed limit, he would not have struck the Oliver car under otherwise identical conditions.
 
 II
 
 5
 Evans argues that Dr. Smith's opinion should have been excluded because it was based on inadmissible experimental evidence, and because its prejudicial effect outweighed its probative value under Fed.R.Evid. 403. The admission of evidence is discretionary and will not be cause for reversal absent a clear abuse of discretion by the trial court. State v. Kopa, 311 S.E.2d 412, 425 (W.Va.1983). Generally, experimental evidence is admissible if the essential conditions of the experiment are shown to be substantially similar to those existing at the time of the accident, "but it is not necessary that the conditions be identical in every respect." Llosky v. Michelin Tire Corp., 307 S.E.2d 603, 617 (W.Va.1983).
 
 
 6
 Evans objects to Dr. Smith's experiment primarily because differences between the Thunderbird used in the experiment and the car driven in the accident can affect the coefficient of friction. Moreover, no evidence was presented comparing road conditions on the date of the accident with road conditions on the date of the experiment. Evans contends that the evidence of differences should have rendered Dr. Smith's testimony inadmissible.
 
 
 7
 Evans relies heavily on several products liability cases involving the admissibility of videotaped experimental evidence. See, e.g., Chase v. General Motors Corp., 856 F.2d 17 (4th Cir.1988); Gladhill v. General Motors Corp., 743 F.2d 1049 (4th Cir.1984); Llosky v. Michelin Tire Corp., supra. We are not faced here with the strong prejudicial impact of a videotaped experiment which comes close to a reenactment of the accident involved. See Chase, 856 F.2d at 19; Gladhill, 743 F.2d at 1051. In this case, the jury was not presented with a visual reenactment, but instead merely with testimony regarding a numeric value derived from a test.
 
 
 8
 Although such evidence should be excluded if conditions of the underlying experiment are not substantially similar to conditions of the accident, evidence was presented that differences between the two vehicles were insignificant for purposes of computing the coefficient of friction. Unlike Llosky v. Michelin Tire Corp., 307 S.E.2d at 618, where experimental evidence was rejected because differences in the test conditions "could materially affect the test results" (emphasis added), Dr. Smith testified that the differences would not affect the coefficient of friction more than five percent. Dr. Smith further testified that he accounted for differences somewhat by using the lowest coefficient that he obtained in four trials of the experiment, and that he also accounted for weight differences between the sole occupant of the accident vehicle and the two occupants of the experimental vehicle. Finally, Dr. Smith testified that tests conducted by the National Highway Traffic Safety Administration between two other significantly different vehicles resulted in a range between coefficients of friction of less than 16%. Dr. Haynes' testimony was somewhat equivocal but generally supported Dr. Smith's opinion that the differences between the vehicles would not significantly affect the coefficient of friction. On this basis, the court admitted the testimony.
 
 
 9
 Although there was no evidence presented comparing road conditions on the date of the experiment to road conditions on the date of the accident, Evans has not claimed that road conditions were different. While evidence on the similarity of road conditions might be desirable, such evidence is not a prerequisite for the admission of experimental evidence. In view of the evidence of substantial similarity of the conditions relevant to the outcome of the experiment, we cannot say that the district court abused its discretion in admitting Dr. Smith's testimony. Testimony regarding the differences between the experimental vehicle and the vehicle in the accident was before the jury, which could evaluate the differences and determine the weight to accord them.
 
 
 10
 Evans also contends that the admission of the testimony was error because neither he nor his representative were present for the experiment. The court in State v. Kopa, 311 S.E.2d at 425, suggested that a lack of participation by opposing counsel provided additional support for the trial court's rejection of experimental evidence which lacked substantial similarity. However, in Llosky v. Michelin Tire Corp., 307 S.E.2d at 617, the court held that it was error to reject experimental evidence solely because of a lack of participation by a party or his representative. Therefore, Evans' lack of participation in the experiment is not cause for reversal.
 
 
 11
 We likewise reject Evans' argument that the experimental evidence was improper under Spurlin v. Nardo, 145 W.Va. 408, 114 S.E.2d 913 (1960). In Spurlin, a court held it error to admit a mechanic's testimony regarding tests with a car identical to that driven by the defendant because the testimony was used for the improper purpose of comparing the mechanic's reactions to those of the defendant. In this case the experiment was not used to compare driver reactions, but was used solely to support the numerical value from which plaintiff's speed was estimated. The expert was subjected to extensive cross-examination so that any weaknesses in his methods or his conclusions were brought home to the jury.
 
 III
 
 12
 Plaintiff asserts further error in the trial court's refusal to submit an instruction to the jury that a driver has the right to assume that others will obey all traffic laws, such that if Evans was favored with a green light, he had the right to assume that Oliver would obey his red light. The district court ruled that the instruction was already covered in the following charges on negligence:
 
 
 13
 A driver ... is bound to obey all traffic regulations regarding the safe operation of his vehicle, and if his violation of those traffic regulations proximately causes injury to another, the injured party has established a prima facie case of negligence against that driver.
 
 
 14
 This prima facie negligence or legal presumption of negligence can only be overcome by a party if he can prove by a preponderance of the evidence that the other party was guilty of negligence that met or exceeded his own in causing the collision.
 
 
 15
 The above charges are not identical to the charge that Evans proposed. Clearly, a driver has the right to assume that other drivers will obey traffic signals under West Virginia law. See Donta v. Harper, 168 W.Va. 237, 283 S.E.2d 921 (1981). However, it is not clear that the failure to give the proposed charge constitutes reversible error in this case.
 
 
 16
 In Donta v. Harper, the court noted that an instruction similar to Evans' proposed instruction was not a complete statement of the law and was misleading because it suggested that the favored driver was relieved of his duty of due care under the circumstances, but upheld the instruction because another instruction stated that continuing duty. Similarly, in Pickett v. Taylor, 364 S.E.2d 818, 822-23 (W.Va.1987), the court stated that a jury instruction that a driver may assume that others will obey the law "should have been balanced with an instruction that there still existed a duty of reasonable care under the circumstances." In this case the proffered instruction was not balanced with an instruction regarding the favored driver's continuing duty of due care, nor did the instruction reflect the possibility, as alleged by defendant, that plaintiff might have run the red light.
 
 
 17
 Although the court may have erred in refusing the proposed instruction without offering the plaintiff the opportunity to submit a balanced alternative, the jury nonetheless found the defendant negligent, indicating that it well understood the significance of defendant's failure to obey his red light. Moreover, the jury was properly instructed that they could find Evans negligent only if his failure to exercise reasonable care to avoid the collision proximately caused the accident. The jury's verdict, therefore, indicates that any error in failing to give the proposed instruction was harmless.
 
 IV
 
 18
 Plaintiff asserts additional error in the failure of the trial court to submit a proposed jury charge on the issue of "remote causation." Plaintiff's proposed charge stated that if Evans' excessive speed
 
 
 19
 merely created the condition under which the collision occurred and that said act was the remote cause of the collision ... and not the proximate cause of the collision, and if ... the Defendant, Larry Edwin Oliver, was negligent in driving his vehicle through the intersection ... against a red traffic signal ... and that the negligence of the Defendant, Larry Edwin Oliver, was the proximate cause of the injuries and damages sustained by the Plaintiff, Wayne L. Evans, then you may find a verdict for the Plaintiff, Wayne L. Evans.
 
 
 20
 (Emphasis supplied.) The district court refused to give the instruction because it was unfamiliar with "remote cause" and believed that the proposed instruction undermined comparative negligence.
 
 
 21
 The cases on which Evans relies for the "remote causation" instruction arose prior to West Virginia's adoption of modified comparative negligence. Evans argues that the adoption of comparative negligence did not eliminate the theory of remote causation. In pure contributory negligence, the theory of remote causation ameliorates the harsh rule which bars a plaintiff from recovery if he is negligent. See Michalak v. County of LaSalle, 121 Ill.App.3d 574, 77 Ill.Dec. 35, 459 N.E.2d 1131 (1984). Under this theory, a plaintiff is not barred from recovery if his negligence merely created a condition under which the injury occurred and was too remote in comparison with the later negligence of the defendant to be a proximate cause of the accident. See Lilly v. Taylor, 151 W.Va. 730, 155 S.E.2d 579 (1967). Although the issue has not yet been addressed in West Virginia, some courts and commentators have suggested that the theory of remote causation has little practical significance in comparative negligence jurisdictions, where fault can be apportioned. See e.g. Campbell v. Otis Elevator Co., 808 F.2d 429 (5th Cir.1987); Armstrong v. Industrial Electric & Equipment Serv., 97 N.M. 272, 639 P.2d 81 (N.M.Ct.App.1981); Michalak v. County of LaSalle, supra. See also V. Schwartz, Comparative Negligence, Sec. 4.2-4.3 (1974); H. Wood, Comparative Fault, Sec. 5:1 at 94 (1978). We note that West Virginia eliminated the doctrine of last clear chance, also developed to modify the harshness of contributory negligence, because "the historical reason for the doctrine ... no longer exists since our adoption of comparative negligence." Ratlief v. Yokum, 167 W.Va. 779, 280 S.E.2d 584, 589 (1981).
 
 
 22
 However, it is not necessary for us to decide today what continued validity the theory of remote causation has in West Virginia. Instead we hold that, assuming the court erred in failing to give the proposed instruction, such error was harmless. The court's instructions on proximate cause and comparative negligence adequately provided the jury with the opportunity to assign whatever negligence it deemed appropriate to the respective parties in this case. Violation of a speed limit is prima facie negligence in West Virginia. Pickett v. Taylor, 364 S.E.2d at 824 n. 4. Evans made no objection to testimony by his own expert, as well as by Dr. Smith, that had Evans not been speeding under otherwise identical circumstances, he would have avoided the accident. Thus, any error was harmless.
 
 
 23
 Closely tied to Evans' arguments on remote causation are arguments directed to proximate causation, even though Evans does not claim error in the instructions given on proximate cause. For Evans' excessive speed to have been a proximate cause of the collision, the collision must have been "a natural, probable and anticipated consequence" of his nonobservance of the speed limit. State Road Commission v. Ball, 138 W.Va. 349, 76 S.E.2d 55, 57 (1955). Evans argues that his failure to obey the speed limit could not have proximately caused the accident because the speed limit was not designed to guard against the "risk of a collision from another's failure to stop for a red light." Evans ignores the statute's intent to avoid accidents in general, rather than to guard against specific risks. Undoubtedly the drafters of the speed limit hoped to reduce even those accidents partially caused by the negligence of others--whether by a child running into the street or by a driver running a red light. Therefore, it was not error for the jury to judge Evans' speed to be a proximate cause of the accident.
 
 V
 
 24
 Finally, we disagree with Evans' conclusion that his negligence in speeding could not have equalled or exceeded Oliver's negligence in running a red light, so that it was unreasonable for the jury to attribute 55% negligence to him and only 45% to the defendant. The evidence presented was sufficient to support a judgment that both parties were negligent, and it was for the jury to apportion such negligence. See Birdsell v. Monongahela Power Co., Inc., 382 S.E.2d 60, 62 (W.Va.1989). Collisions at intersections are usually "swearing contests" and are decided by juries after a credibility analysis. There is little in the present case to remove it from this mold. Therefore, the final judgment on the jury verdict entered by the district court is
 
 
 25
 AFFIRMED.
 
 
 
 *
 Dr. Haynes admitted that his estimate of Evans' speed would have been greater had he factored in the full length of post-impact skid marks