**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RED BIRD EGG FARMS, INCORPORATED,
*Plaintiff-Appellant,*

v.

PENNSYLVANIA MANUFACTURERS
INDEMNITY COMPANY,
*Defendant-Appellee.*

No. 00-1149

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-99-1303-AMD)

Argued: December 6, 2000

Decided: August 3, 2001

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge,
and William L. GARWOOD, Senior Circuit Judge of the
United States Court of Appeals for the Fifth Circuit,
sitting by designation.

Affirmed by unpublished opinion. Senior Judge Garwood wrote the
opinion, in which Chief Judge Wilkinson and Judge Widener joined.

## COUNSEL

**ARGUED:** Curtis Charles Coon, LAW OFFICE OF CURTIS C.
COON, L.L.C., Towson, Maryland, for Appellant. Jeffrey Allan
Wothers, NILES, BARTON & WILMER, Baltimore, Maryland, for

Appellee. **ON BRIEF:** Robert L. Mauro, LAW OFFICE OF CURTIS C. COON, L.L.C., Towson, Maryland; C. Daniel Saunders, LAW OFFICES OF C. DANIEL SAUNDERS, Chestertown, Maryland, for Appellant. Jason C. Brino, Sedica Sawez, NILES, BARTON & WILMER, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

### OPINION

GARWOOD, Senior Circuit Judge:

Plaintiff-appellant Red Bird Egg Farms, Inc. (Red Bird) brought a declaratory judgment action against defendant-appellee Pennsylvania Manufacturer's Indemnity Co., (PMA),[1] in the Circuit Court of Maryland for Kent County on March 17, 1999. On May 5, 1999, PMA removed the case to the United States District Court for the District of Maryland on the basis of diversity of citizenship. After a bench trial on January 6, 2000, the district court issued an oral opinion and granted judgment in favor of PMA, and Red Bird now appeals. We affirm the judgment of the district court.

### *FACTS AND PROCEEDINGS BELOW*

Red Bird's primary business is the production of chicken eggs. Its facility consists of seven layer houses in Millington, Maryland, which house over one-half million chickens. If these chicken houses are not constantly ventilated, the chickens will die within an hour or so. To prevent this, Red Bird employs an extensive system of electric venti-

---

[1]Red Bird is a Delaware corporation, with its principle place of business in Maryland. PMA is a Pennsylvania corporation with its principal place of business in Pennsylvania; it does business in several states.

lation fans. The ventilation fans require "three-phase" alternating current to operate correctly.[2]

Red Bird's original insurance carrier was CIGNA, which decided, in the wake of a hurricane, to discontinue coverage to poultry businesses east of the Mississippi. Red Bird went shopping for another carrier, and shortly before March 1, 1997, Red Bird and PMA agreed on insurance coverage, and a "Binder" which comprised most of the policy was issued to Red Bird. This original policy included the statement "Hartford Steam Boiler Endorsements to Follow," as also did the renewal policy, which was issued March 1, 1998. In June of 1998 a Hartford Steam Boiler Endorsement was received by Red Bird which required that for a business interruption loss involving the interruption of power to be covered, power must be lost for a period of twenty-four hours or more.

On the evening of July 21, 1999, a lightning strike somewhere outside of Red Bird's property caused a power loss that interrupted the power supply to Red Bird's property. Red Bird had two backup generators on its property, each of which was capable of supplying three-phase power. When the power was interrupted, the primary generator automatically engaged. Shortly thereafter, the primary generator failed because of a ruptured coolant hose. As a Red Bird employee was trying to fix the primary generator, the local power company, Choptank Electrical Cooperative, restored power to Red Bird's facility. Instead of three-phase power, however, Choptank restored only single-phase power, which burned out the motors in approximately one hundred of Red Bird's ventilation fans, permanently damaging them. A Red Bird employee disconnected the incoming power and

---

[2]Alternating current oscillates between positive and negative voltage, and in ordinary household current this oscillation is a straightforward sine wave. This kind of current is called single-phase. Three-phase current is essentially the "stacking" of three single phase voltage oscillations on a single line. This stacking enables greater power transmission over an existing electrical line. Each stacked wave is slightly out of phase with the others. Electric motors, such as the ones in the ventilation fans, are built to handle only one type of alternating current. Three-phase power is used mainly in industrial applications. Three-phase motors will burn out if they are supplied with single phase current.

activated the secondary generator, but that generator failed as well, at least partly because it could not handle the increased load of the burned out fan motors. Without the fans, approximately 500,000 chickens perished. Red Bird filed a claim with PMA for the loss of the birds, debris removal, damage to the generators, and business interruption. PMA paid Red Bird approximately $1,000,000 in satisfaction of all but the business interruption claim, which PMA denied.

Red Bird brought this declaratory judgment action against PMA in Maryland state court, seeking a declaration that PMA was required to provide Red Bird with business interruption coverage. PMA removed the suit to federal district court. On October 7, 1999, three months before the scheduled trial date, Red Bird's counsel withdrew from the case. Several joint motions for extensions of discovery and for re-setting the trial date were denied. On January 3, 2000, three days before trial, Red Bird requested leave to amend its complaint to add an estoppel theory of recovery. The court denied Red Bird's motion on the grounds that the requested amendment would unfairly prejudice the defendant. The court observed that the addition of an estoppel claim would require the joinder of an additional party (the insurance broker) which, three days before trial, was not feasible and was unfairly prejudicial to PMA.

After a bench trial on January 6, 2000, the district court issued an oral opinion and granted judgment in favor of PMA (it did not issue a written opinion in this case). The district court ruled that there was no ambiguity in the relevant portions of the insurance policy, and that Red Bird was not due coverage for business interruption. The court found that there was no fire, and so the fire damage portions of the policy were not relevant. The court also found that single-phase current was the same as too little power, and that too little power was the same as no power. Accordingly, the court considered the business interruption to be caused by an interruption in power and therefore excluded from coverage under the policy.

## DISCUSSION

This Court will not set aside a district court's findings of fact unless they are clearly erroneous. Fed. R. Civ. P. 52(a). Similarly, "we must give due regard to the opportunity of the district court to

judge the credibility of the witnesses." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable*, 65 F.3d 1113, 1122 (4th Cir. 1995). We review the district court's conclusions of law *de novo*. *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1383 (4th Cir. 1995). Finally, the district court is given broad discretion to grant or deny a motion to amend a complaint, and we will overturn such a decision only if there has been an abuse of discretion. *Gladhill v. General Motors*, 743 F.2d 1049, 1052 (4th Cir. 1984).

## *POWER FAILURE EXCLUSION*

As a preliminary matter, Red Bird argues that the district court improperly considered a disputed endorsement to be part of the policy in question.[3] PMA counters by claiming that this issue was not argued at trial, and that in any event the court did not rely on the language of the endorsement, and instead relied on the language of the policy itself, particularly Part B(4)(a) of the Causes of Loss-Special Form.[4] PMA has the better argument.

Although the district court's oral ruling was brief, it clearly appears that the court's ruling was based on the language of Part B(4)(a), which excludes coverage for any loss caused directly or indirectly by the failure of power or other utility services, and which was part of the original policy. The Hartford Endorsement is therefore irrelevant

---

[3]The document in question, the "Hartford Steam Boiler Endorsement," provided business interruption coverage for losses caused by certain off premises utility interruptions. But, the endorsement had a limitation—the interruption in service had to continue for twenty-four hours before coverage attached to damage caused by the interruption.

[4]The relevant exclusion in the policy, Part B(4)(a)(1) of the form explaining the covered causes of loss, reads:

> We will not pay for:

> (1) Any loss caused directly or indirectly by the failure of power or other utility service supplied to the described premises, however caused, if the failure occurs outside of a covered building.

> But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss.

to the present case,[5] and the propriety of the district court's ruling depends on whether it properly construed Part B(4)(a) of the policy.

PMA cites several cases in its brief in which courts have construed similar policy language to exclude coverage for business interruptions caused by power outages. But, the court in this case did not simply hold that the outage caused the damage. Instead, the court held that the introduction of single-phase current caused the damage to Red Bird's facility. Thus, the facts of this case are somewhat more complicated than a situation in which utility service simply stops. The question is whether what happened in this case was "a failure of power or other utility service" that is excluded from coverage under the policy.

Under Delaware law, which the parties agree applies in this respect, the language of insurance contracts is construed against the insurance company that drafted them. *Novellino v. Life Insurance Company of North America*, 216 A.2d 420, 422 (Del. 1966). However, Delaware law also holds that the court should not re-write an insurance policy under the guise of construction. The court should analyze the policy as a whole to determine whether an ambiguity exists. *See Aetna Casualty & Surety Co. v. Kenner*, 570 A.2d 1172, 1174 (Del. 1990). Only if there is ambiguity in the language employed or confusion in the selection of language should any problem of construction arise, and the plain meaning of the language in the policy should control. *Novellino*, 216 A.2d at 422. We agree with the district court that the plain meaning of "failure of power or other utility service" encompasses the power problems Red Bird experienced on July 21, 1999.

After a bench trial, the district court concluded that the power problems at Red Bird constituted a "failure of power or utility other service" within the meaning of the policy exclusion in part B(4)(a)(1) of the Covered Causes of Loss—Special Form. The district court stated:

. . . I find as a fact and conclude as a matter of law, that the

---

[5]Red Bird does not claim that the Hartford Endorsement would expand its coverage under the policy so as to include its business interruption claim. Instead, Red Bird seeks to avoid the Endorsement.

single phasing was the equivalent of a power interruption. Too little power is the same as no power.

. . . As I say, and I emphasize, if the equipment on this plant requires three-phase current to properly operate and Choptank provided less than three-phase current, then that was a power interruption. It was a power loss. It was not that they had power. They did not have power. As a matter of fact, that is the Court's finding.

Red Bird attacks the district court's finding on essentially the grounds that since the motors in the fans burned out, the introduction of single phase power cannot properly be considered an "interruption" in power, and, in fact, can best be characterized as too much power for the three-phase fans. There are two flaws in Red Bird's argument. First, the language of the policy excludes business interruption losses caused by a "failure of power or other utility service," and does not mention "interruptions." Accordingly, Red Bird's detailed discussion of the accepted meanings of the word "interruption" is irrelevant. It is the language of the policy that controls.

Second, the record evidence supports the determination that, contrary to Red Bird's assertions, single-phase current was not "too much" power for the ventilation fans. Rather, single-phase power was the wrong *type* of power for the fans. Red Bird's argument that single-phase power should be considered to be "too much" power is unsupported by the record.

The district court, after a bench trial, found that the introduction of single-phase power to equipment that was designed to use three-phase power was a "failure of power" within the meaning of Part B(4)(a) of the Causes of Loss—Special Form. The district court's application of the facts to the language of the policy was reasonable and is not clearly erroneous in light of the evidence. It was not error for the district court to have determined the events at Red Bird's farm to be a "failure of power or other utility service" within the plain meaning of that phrase. The district court accordingly did not err in concluding that the PMA policy did not provide business interruption coverage for this loss.

## *MOTION TO AMEND THE COMPLAINT*

Red Bird also claims that the district court abused its discretion when it refused to allow Red Bird to amend its complaint to include a theory of recovery based on promissory estoppel and detrimental reliance. Red Bird brought this motion on January 3, 2000, three days before trial was scheduled to begin.

Rule 15(a) of the Federal Rules of Civil Procedure provides that when a party seeks leave to amend a complaint, "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a), *Ward Electronics Service v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987). Leave to amend should be given absent some stated reason, such as undue delay, bad faith, futility, or undue prejudice to the opposing party. However, the disposition of a motion to amend is within the sound discretion of the district court and there must be some abuse of that discretion to warrant reversal on this issue. *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir. 1984). Red Bird's new counsel had been counsel of record for over three months, and the case was scheduled to begin three days after the motion to amend was filed. The district court found that the amendment would result in undue prejudice to PMA, since the amended complaint would add a theory of the case that would require joinder of additional parties and the addition of new witnesses. Despite the permissive standard of Rule 15(a), the district court did not abuse its discretion when it denied the motion to amend—the addition of this new theory of the case three days before trial would have disrupted the trial schedule and unduly prejudiced PMA.

## *FINDINGS OF FACT: FIRE*

Finally, Red Bird argues that the district court's finding that the damage to the motors was not "fire" damage within the policy was clearly erroneous. Part B(4)(a)(1) of the Causes of Loss-Special Form contains an exception: "[I]f the failure of power or other utility services results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss." Since fire is a covered cause of loss, Red Bird argues, if the motors were damaged by fire their business interruption loss should be covered.

Once the electric motors in the ventilation fans were exposed to single-phase current, the motors in many of the fans "burned out." This appears to have involved overheating, melting of the insulation around wires in the motors, and some smoke. But, there was no evidence of any flames. The district court found as a fact that although the motors "burned out," there was no actual "fire" involved. The damage caused in this case is enough like fire that perhaps a finding that the damage was fire damage would be supported by the evidence. However, the damage is not so obviously "fire" damage as to render the district court's factual finding clearly erroneous. *See, e.g.*, *Quadrangle Development Corp. v. Hartford Ins. Co.*, 645 A.2d 1074, 1075 (D.C. 1994) (holding that the plain meaning of "fire" indicates the presence of flame). The district court's finding that there was no fire damage to the ventilation fan was not clearly erroneous, and is supported by the evidence.

## *CONCLUSION*

The district court did not err when it concluded that plain meaning of the phrase "failure of power or other utility service" encompassed the introduction of single-phase current into Red Bird's facility under the circumstances here. Nor did the court abuse its discretion when it refused to allow Red Bird to amend its complaint and add a new theory of recovery on the eve of trial. Finally, the district court's finding that the damage to Red Bird's ventilation fans was not fire damage is not clearly erroneous. Accordingly, the judgment of the district court is

*AFFIRMED*.