938 F.2d 1518
 33 Fed. R. Evid. Serv. 1294, Prod.Liab.Rep.(CCH)P 12,860
Jeanne RAYMOND, Individually and as Administratrix of the
Estate of Roland N. Raymond, Plaintiff, Appellant,
v.
The RAYMOND CORPORATION, Defendant, Appellee.
 No. 91-1110.
 United States Court of Appeals,
First Circuit.
 Heard May 6, 1991.
Decided July 29, 1991.
 
 Blake M. Sutton with whom Bouchard & Mallory, P.A. were on brief, Manchester, N.H., for appellant.
 Richard P. Campbell with whom Campbell and Associates Professional Corporation, Boston, Mass., Patrick Schmidt and Quarles & Brady were on brief, Milwaukee, Wis., for defendant, appellee.
 Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRES*, District Judge.
 BOWNES, Senior Circuit Judge.
 
 
 1
 In this strict product liability diversity action, plaintiff-appellant Jeanne Raymond, on behalf of herself and as administratrix of her husband Roland Raymond's estate, appeals from an order of the United States District Court for the District of New Hampshire denying her motion for a judgment notwithstanding the verdict or a new trial. The plaintiff raises five evidentiary issues on appeal and also contends that a new trial is mandated by the existence of newly discovered evidence. We conclude that neither a judgment notwithstanding the verdict nor a new trial is warranted.
 
 I. BACKGROUND
 
 2
 This case arises from an accident which occurred on April 9, 1987, on the premises of Edgcomb Metals ("Edgcomb") in Nashua, New Hampshire. Plaintiff's decedent, Roland Raymond, an Edgcomb employee, was operating a sideloader in the course of his employment. The sideloader, known as a Model 75, was manufactured and sold by defendant Raymond Corporation in 1981.[1]
 
 
 3
 The accident occurred when the sideloader being operated by Roland Raymond collided with a steel channel beam which protruded into the aisle in the path of the sideloader. The beam broke through a rear-corner support post on the sideloader, pierced the operator's compartment and struck Raymond, causing him severe injuries from which he died six days later.
 
 
 4
 Decedent's estate brought suit against defendant, alleging that the sideloader was defectively designed and manufactured because 1) the vertical support post should have had full penetration welds attaching the top and bottom of the support to the base and roof of the sideloader; 2) the two rear support posts should have been connected by a backplate; and 3) the defendant failed to provide adequate warnings of these dangerous conditions.
 
 
 5
 The case was tried before a jury which returned a verdict for the defendant. Specifically, the jury responded "no" to the following special question: "Based on a preponderance of the evidence, do you find that the sideloader manufactured by the defendant Raymond Corporation was in a defective condition, unreasonably dangerous to the user, at the time it was manufactured and sold?"
 
 
 6
 On October 30, 1990, plaintiff moved for a judgment notwithstanding the verdict or, in the alternative, a new trial. This motion was denied by order of the district court on December 7, 1990. This appeal followed.
 
 II. STRICT LIABILITY IN NEW HAMPSHIRE
 
 7
 New Hampshire has adopted the Restatement (Second) of Torts Section 402A theory of products liability:
 
 
 8
 Section 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer
 
 
 9
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 
 
 10
 (a) the seller is engaged in the business of selling such a product, and
 
 
 11
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 
 
 12
 (2) The Rule stated in Subsection (1) applies although
 
 
 13
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 
 
 14
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
 
 
 15
 See Fortier v. Olin Corporation, 840 F.2d 98, 99 (1st Cir.1988); Thibault v. Sears, Roebuck & Company, 118 N.H. 802, 813, 395 A.2d 843, 850 (1978); Buttrick v. Lessard, 110 N.H. 36, 38-39, 260 A.2d 111, 113 (1969).
 
 
 16
 The burden is upon the plaintiff to prove a "defective condition unreasonably dangerous to the user," Thibault, 118 N.H. at 807, 395 A.2d at 846 (citations omitted), as well as to show that the unreasonably dangerous condition existed when the product was purchased. Id. at 809, 395 A.2d at 847 (citing McLaughlin v. Sears, Roebuck & Co., 111 N.H. 265, 267, 281 A.2d 587, 588 (1971)); Fortier, 840 F.2d at 100. We consider appellant's evidentiary claims in light of this standard.
 
 
 17
 III. MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT
 
 
 18
 On a motion for judgment notwithstanding the verdict, the trial judge must view all the evidence and inferences flowing therefrom in the light most favorable to the non-moving party. Hendricks & Assoc., Inc. v. Daewoo Corp., 923 F.2d 209, 214 (1st Cir.1991); Austin v. Lincoln Equipment Assoc., Inc., 888 F.2d 934, 937 (1st Cir.1989); Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir.1989). Such a motion should be granted only if, as a matter of law, the evidence would lead a reasonable jury to only one conclusion--that the moving party was entitled to judgment. Hendricks, 923 F.2d at 214; Austin, 888 F.2d at 937; Gutierrez-Rodriguez, 882 F.2d at 558. In making this determination, the district court " 'may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence.' " Hendricks, 923 F.2d at 214 (citations omitted). A denial of judgment n.o.v. is reviewed de novo; in reviewing the decision we utilize the same standards as those applied by the trial court. Hendricks, 923 F.2d at 214; Austin, 888 F.2d at 937.
 
 
 19
 Upon reviewing the evidence, we find that the jury acted within its bounds as factfinder in determining that the Model 75 sideloader was not unreasonably dangerous at the time of manufacture and sale. Defendant presented evidence showing that the Model 75 sideloader as designed met all American National Standards Institute ("ANSI") specifications in effect at that date. Defendant's expert testified that the addition of a backplate as advocated by the plaintiff would neither have prevented nor mitigated decedent's injuries.
 
 
 20
 In addition, there was undisputed evidence at trial that the sideloader's corner support post did not comport with defendant's design specifications. The Raymond design showed that the post had beveled edges, which this post did not, and that it should be attached to the frame with thicker welds than were used on this post. Plaintiff introduced testimony which, if believed, proved that neither the corner support post nor its welds had been repaired or replaced between 1985 and 1987, when the accident occurred. There was, however, no "repair" evidence at all for the years 1981 to 1985. Thus, even if the jury found that the sideloader was unreasonably dangerous at the time of the accident, it could have determined that this was due to faulty repairs conducted subsequent to the manufacture. This would be consistent with their finding that the sideloader was not unreasonably dangerous at the time of manufacture and sale.
 
 
 21
 Viewing the evidence in the light most favorable to the defendant, we conclude that it was reasonable for the jury to find as it did. The district court did not err in denying the plaintiff's motion for judgment notwithstanding the verdict.
 
 IV. MOTION FOR A NEW TRIAL
 
 22
 In determining whether to grant a motion for a new trial, the district court must give due deference to " 'the jury's constitutionally sanctioned role as finder of fact.' " Hendricks, 923 F.2d at 217 (citations omitted). A trial judge may only displace the jury's verdict upon a finding that the verdict is "against the clear weight of the evidence." Id. at 217 (quoting Coffran v. Hitchcock Clinic, Inc., 683 F.2d 5, 6 (1st Cir.), cert. denied, 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982)).
 
 
 23
 A trial judge's denial of a motion to grant a new trial is reviewed under an abuse of discretion standard. Id. at 217; Gutierrez-Rodriguez, 882 F.2d at 558. We will only reverse the district court's decision "if the verdict is so seriously mistaken, so clearly against the law or the evidence as to constitute a miscarriage of justice." Gutierrez-Rodriguez, 882 F.2d at 558 (citations omitted).
 
 
 24
 Because we find the evidence sufficient to support the jury's findings, the main issue is whether the district court erred as alleged by the plaintiff and, if so, whether any errors are sufficient to necessitate a new trial. We thus review each of the plaintiff's six arguments seriatim. We consider the relevance of the alleged errors only as they relate to the issue of whether the sideloader was unreasonably dangerous at the time of manufacture and sale, as this was the only question reached by the jury.
 
 A. Design Modifications
 
 25
 The sideloader involved in this case was a Model 75 sideloader, which was manufactured and sold by defendant in 1981. Plaintiff claimed that the addition of a backplate connecting the two rear support posts with more substantial welds would have either prevented or mitigated the effect of the accident.
 
 
 26
 In its attempt to show that defendant had knowledge that the sideloader was unreasonably dangerous without these modifications, plaintiff moved in limine to introduce evidence regarding the addition of a backplate to Raymond's Model 76 sideloader, which was first manufactured in 1983. This was two years subsequent to the manufacture of the sideloader at issue. Plaintiff also sought to introduce evidence of post-accident modifications consisting of the addition of a backplate and more secure welding made by Edgcomb to the Model 75 sideloader involved in the dispute. The district court denied both motions under Federal Rules of Evidence 407 and 403.
 
 1. Rule 407
 
 27
 The first question is whether Rule 407 applies to strict liability cases. The Eighth and Tenth Circuits have found that Rule 407 does not generally apply to cases of strict liability. Donahue v. Phillips Petroleum Co., 866 F.2d 1008, 1013 (8th Cir.1989); Herndon v. Seven Bar Flying Service, Inc., 716 F.2d 1322, 1331 (10th Cir.1983), cert. denied sub nom., Piper Aircraft Corp. v. Seven Bar Flying Service, Inc., 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). The First Circuit, however, has at least impliedly accepted its application in this context. Roy v. Star Chopper Co., Inc., 584 F.2d 1124 (1st Cir.1978) (applied Rule 407 without discussion in a strict liability case), cert. denied, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979). This is in accord with a majority of the circuits. Chase v. General Motors Corp., 856 F.2d 17, 22 (4th Cir.1988); Gauthier v. AMF, Inc., 788 F.2d 634, 637 (9th Cir.), amended, 805 F.2d 337 (1986); Flaminio v. Honda Motor Co., Ltd., 733 F.2d 463, 469 (7th Cir.1984); Grenada Steel Industries v. Alabama Oxygen Co., Inc., 695 F.2d 883, 888 (5th Cir.1983); Hall v. American Steamship Co., 688 F.2d 1062, 1066-67 (6th Cir.1982); Josephs v. Harris Corp., 677 F.2d 985, 990-91 (3d Cir.1982); Cann v. Ford Motor Co., 658 F.2d 54, 60 (2d Cir.1981), cert. denied, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982). We now explicitly hold that Fed.R.Evid. 407 applies to strict liability cases.
 
 
 28
 Under Fed.R.Evid. 407, evidence concerning "subsequent remedial measures" is not admissible at trial. Rule 407 states, "When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event."The twofold purpose of Rule 407 is made clear in the Advisory Committee Notes following the rule. The first objective of the rule is to avoid unfairly prejudicing the defendant. It was thought that jurors would too readily equate subsequent design modifications with admissions of a prior defective design. Such evidence also distracts the jury from the relevant time frame for its inquiry, i.e., whether the product was defective at the time of manufacture and sale.
 
 
 29
 The second goal of Rule 407 is to further the social policy of encouraging manufacturers to create safer products. If subsequent safety improvements to a product could be used as evidence that prior models were defectively designed, this would discourage manufacturers from continuing to update and improve upon the safety features of their products after initial manufacture.
 
 
 30
 Rule 407 does not, however, exclude evidence of subsequent remedial measures without exception. As stated in the last sentence of the Rule, 407 cannot be used to exclude evidence offered for "another purpose," one of which is "feasibility of precautionary measures."[2] See, e.g., Dixon v. International Harvester Co., 754 F.2d 573, 584 (5th Cir.1985); Estate of Spinosa v. International Harvester Co., 621 F.2d 1154, 1160 n. 5 (1st Cir.1980). This exception only applies if feasibility is controverted. Mills v. Beech Aircraft Corp., Inc., 886 F.2d 758, 764 (5th Cir.1989); Werner v. Upjohn Co., Inc, 628 F.2d 848, 855 (4th Cir.1980), cert. denied, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981); Knight v. Otis Elevator Co., 596 F.2d 84, 91-92 (3d Cir.1979). Here, plaintiff and defendant stipulated to feasibility.
 
 2. Model 76
 
 31
 Model 76 was manufactured subsequent to the Model 75 sideloader involved in the accident. The design modifications used on Model 76, however, were on the drawing board prior to the manufacture of Model 75. In refusing to admit evidence regarding the modifications embodied in Model 76, the district court correctly determined that the feasibility exception to Rule 407 did not apply because feasibility had been stipulated to by the parties. Any reliance upon 407 at all, however, was misplaced because the Model 76 design modifications did not constitute "subsequent remedial measures."
 
 
 32
 Under 407, only measures which take place after the "event" are excluded. The term "event" refers to the accident that precipitated the suit. Roberts v. Harnischfeger Corp., 901 F.2d 42, 44 n. 1 (5th Cir.1989); Chase v. General Motors Corp., 856 F.2d 17, 21 (4th Cir.1988). As the Model 76 modifications took place prior to the 1987 accident, Rule 407 cannot be applied. See, e.g., Chase, 856 F.2d at 22 (Trial judge's use of 407 to exclude evidence of change in brake design that occurred after manufacture and sale of allegedly defective vehicle but before accident was improper.); Arceneaux v. Texaco, Inc., 623 F.2d 924, 928 (5th Cir.1980) (Trial judge improperly utilized 407 to exclude evidence of change in position of gas tank that occurred after manufacture of plaintiff's truck but before accident.), cert. denied, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 359 (1981).
 
 
 33
 The district court also invoked Fed.R.Evid. 403 to exclude evidence of the Model 76 modifications. The district court did not abuse its discretion in ruling that the Model 76 evidence was only marginally relevant and excluding the evidence under Rule 403.[3] Under 403, even relevant evidence may be excluded if the probative value of the evidence is outweighed by the possibility of unfair prejudice to one of the parties. The district court has considerable discretion in conducting this weighing process, United States v. Cintolo, 818 F.2d 980, 998 (1st Cir.), cert. denied, 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987), and its ruling will only be overturned if it "did not fall within the ambit of reasonable debate." United States v. Currier, 821 F.2d 52, 55 (1st Cir.1987) (citations omitted).
 
 
 34
 Following the Restatement (Second) of Torts,[4] the question of strict liability in New Hampshire centers on the level of dangerousness of the product at the time of sale. For this reason, the introduction of evidence of pre-accident design modifications not made effective until after the manufacture of the allegedly defective product may reasonably be found unfairly prejudicial to the defendant and misleading to the jury for determining the question whether the product was unreasonably dangerous at the time of manufacture and sale. Cf. Roberts v. Harnischfeger, 901 F.2d at 44 (" '[D]esign changes developed after the manufacture of the product in question ... [are] irrelevant to the reasonableness of the design at the time of manufacture.' ") (citations omitted).
 
 
 35
 It was not error for the district court to conclude that the probable prejudicial effects of the evidence outweighed its probative value.
 
 3. Third Party Repairs
 
 36
 The court also denied a motion in limine requesting that evidence regarding post-accident repairs made by Edgcomb be admitted at trial. These modifications consisted of the addition of a backplate and more secure welding, similar to the changes advocated by plaintiff's expert. The court denied this motion, again relying on the stipulation to find that the feasibility exception to Rule 407 did not apply[5] and thus that the evidence would be unnecessarily cumulative and prejudicial. While we agree that the evidence was properly excluded, we would like to clarify the reasoning for doing so.
 
 
 37
 Rule 407 applies only to subsequent remedial measures taken voluntarily by the defendant. See, e.g., O'Dell v. Hercules, Inc., 904 F.2d 1194, 1204 (8th Cir.1990); Koonce v. Quaker Safety Products & Manufacturing Co., 798 F.2d 700, 719-20 (5th Cir.1986). As the Ninth Circuit explains:
 
 
 38
 Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them. Gauthier v. AMF, Inc., 788 F.2d 634, 637 amended, 805 F.2d 337 (9th Cir.1986). A nondefendant will not be inhibited from taking remedial measures if such actions are allowed into evidence against a defendant. Causey v. Zinke (In re Aircrash in Bali, Indonesia), 871 F.2d 812, 816-17 (9th Cir.), cert. denied [--- U.S. ----], 110 S.Ct. 277 [107 L.Ed.2d 258] (1989).
 
 
 39
 Pau v. Yosemite Park and Curry Co., 928 F.2d 880, 888 (9th Cir.1991). Because the social policy which forms the primary basis of Rule 407 is not furthered,[6] there is no rationale for excluding third party subsequent repairs under the Rule.
 
 
 40
 This does not necessarily mean, however, that the evidence must be admitted. As discussed supra, evidence may be excluded under Fed.R.Evid. 403 if its probative value is outweighed by the unfair prejudice that could result. Rule 403 may be used to exclude evidence of subsequent third party actions which are felt to bear only marginally on the question of whether a product was unreasonably dangerous at the time of manufacture. Grenada Steel, 695 F.2d at 889 (Evidence of subsequent nonparty repairs was properly excluded under 403 because it "lacked probative value and injected the dangers of confusion and misleading the jury."); Gauthier v. AMF, Inc., 805 F.2d 337, 338 (9th Cir.), amending, 788 F.2d 634 (1986) (Evidence of nonparty manufacturer's subsequent design changes should have been excluded under 403 as irrelevant.); Koonce, 798 F.2d at 720 (Memo written by nonparty to suit regarding safety measures taken in response to accident could properly have been excluded as prejudicial or misleading.). As the Fifth Circuit has noted: "We fail to see how an alternative design, developed by another person years after the product in question was manufactured, is relevant to whether the product was reasonably safe at the time it was made." Grenada Steel, 695 F.2d at 889.
 
 
 41
 The same point applies here. Evidence of repairs and modifications made by Edgcomb six years after the manufacture of the sideloader has little bearing on whether or not the sideloader was unreasonably dangerous in 1981. Thus we find that the district court acted within its discretion in excluding this evidence.
 
 B. Expert Testimony
 
 42
 Plaintiff claims that the court erred in admitting certain testimony by defendant's expert, Edward Caulfield. We think it important to set out fully that part of appellant's brief in which this claim is made:
 
 
 43
 II. THE DISTRICT COURT ERRED IN ALLOWING DEFENDANT'S EXPERT TO TESTIFY REGARDING A DEFENSE THEORY WHICH DEFENDANT HAD FAILED TO DISCLOSE TO PLAINTIFF PRIOR TO TRIAL.
 
 
 44
 During the entire course of discovery in this case, the defendant had raised as defenses the alleged misconduct of the plaintiff's decedent, Roland Raymond, in failing to see the improperly stacked steel at his workplace, and the alleged third-party negligence of Edgcomb Metals in employing improper steel storage policies.
 
 
 45
 However, during the entire course of discovery in this case, the defendant never raised the issue that the post and weld on the sideloader were not the original post and weld at the time of manufacture. Only during trial did defendant attempt to elicit testimony from its expert, Edward Caulfield, that the post and weld at the time of the accident were not produced by The Raymond Corporation but were, rather, a subsequent modification.
 
 
 46
 This evidence was admitted over plaintiff's objection, the trial court ruling that the issue was not a matter of defense which required advance pleadings and notice to the plaintiff. Under the circumstances of this case, this ruling was an error, which severely prejudiced the plaintiff's ability to meet its burden of proof.
 
 
 47
 Appellant's Brief at 23 (emphasis added).
 
 
 48
 We have examined very carefully the trial transcript of Edward Caulfield's testimony, and there is no testimony by him stating directly or by inference "that the post and weld at the time of the accident were not produced by the Raymond Corporation but were, rather, a subsequent modification." Nor was there an objection by plaintiff's counsel to any testimony even arguably within the ballpark area of plaintiff's claimed testimony. And the ruling allegedly made by the district court is non-existent.
 
 
 49
 We do not know on what basis this claim of error was made, but it certainly was not the record. Appellant has spent five pages of her brief arguing an issue that was not part of the case. We can only conclude that counsel for appellant was inexcusably ignorant of the record or engaged in a deliberate misrepresentation. We would be inclined, as a matter of charity, to ascribe the raising of this issue to egregious negligence except for the fact that this error was pointed out specifically in appellee's brief. We cannot understand why even at that late date the transcript was not checked and the false issue withdrawn. Advancing an issue without record support inevitably casts a pall of doubt and suspicion over the other issues raised by appellant.[7]
 
 
 50
 Plaintiff also contends that the district court erred in refusing to allow plaintiff's expert, Raymond Hagglund, to testify as to whether the welds attaching the corner posts to the base of the sideloader were the original welds. The trial judge excluded the testimony on the grounds that plaintiff had failed to lay a proper foundation for the testimony and that plaintiff's expert had never expressed his opinion as to whether or not the welds were the original ones either in his deposition or official report.
 
 
 51
 Trial judges have discretion in determining whether a proffered expert is qualified to testify, McDonald v. Federal Laboratories, Inc., 724 F.2d 243, 248 (1st Cir.1984) (citations omitted), and in determining whether to admit or exclude discrete portions of expert testimony. United States v. Ladd, 885 F.2d 954, 959 (1st Cir.1989) (citations omitted). Exclusionary rulings will only be reversed for "manifest and damaging error." Northern Heel Corp. v. Compo Industries, Inc., 851 F.2d 456, 468 (1st Cir.1988) (citing Independent Nail and Packing Co. v. Mitchell, 343 F.2d 819, 823 (1st Cir.1965)). The trial judge's discretion in this area includes the power to "bar or limit testimony when a party fails to comply fully with valid discovery requests." Id. at 468 n. 5.
 
 
 52
 Upon examination of the record, we find that the district court's refusal to admit this testimony was not an abuse of discretion. While there might be some question about the court's conclusion that Professor Hagglund lacked sufficient expertise to determine whether or not the welds were the original ones,[8] we uphold the district court's ruling on the second ground given: that plaintiff's expert had never, in the course of his deposition or his written report, expressed an opinion as to whether or not he believed the welds were the original ones. The fact that his reports had "implied" that the welds were the original ones is not sufficient, and it was within the prerogative of the court to exclude this testimony at trial.
 
 C. Reference to Insurance Carrier
 
 53
 Plaintiff also objects to the court's refusal to strike a reference to the fact that Professor Hagglund had first been employed by Edgcomb's insurance carrier. In response to a motion in limine, the court had ruled that no reference to the identity or existence of Edgcomb's worker's compensation insurer was to be made at trial.
 
 
 54
 In the course of cross-examination of Professor Hagglund, defendant's counsel sought to elicit from the witness the fact that he had originally been hired by a "Mr. List" for the purpose of investigating the accident and establishing liability on the part of the defendant. When defendant's counsel suggested in his question that List's company had a "potential financial interest" in the case, the court sustained plaintiff's objection to the question, ordered that it be stricken and instructed the jury to disregard it. Counsel then refashioned its question to suggest merely an "interest" in the outcome of the litigation. The court overruled plaintiff's objection to this form of the question, but the witness did not directly respond to the question; instead he volunteered the information that List's company possessed a "financial interest" in the outcome of the litigation. The court allowed this statement to stand.
 
 
 55
 The district court was within its discretion in concluding that the plaintiff was not unfairly prejudiced by the oblique reference to insurance made by the plaintiff's expert. See Roy v. Star Chopper Co., Inc., 584 F.2d 1124, 1135 (1st Cir.1978) (single inadvertent reference to fact that defendant carried insurance held not prejudicial), cert. denied, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979).
 
 D. Newly Discovered Evidence
 
 56
 Lastly, plaintiff contends that a new trial should be granted on the basis of newly discovered evidence. This evidence concerns what apparently was an interoffice memorandum dated October 19, 1977 and addressed to defendant's engineer, Robert Rogers, from A.R. Brown. The memorandum was captioned "Stand-up End Controlled Rider Fork Trucks" and recommended that the ANSI B56.1-1975 standard regarding narrow aisle trucks be amended to provide that the operator's compartment "shall form a protective barrier on all sides of the operator."
 
 
 57
 At trial, Rogers testified that a sideloader was not a "narrow aisle truck" within the meaning of ANSI standard B56.1. Following trial, plaintiff's attorney contacted the American Society of Mechanical Engineers ("ASME") and apparently was told that a sideloader is a "narrow aisle truck" under that standard. Plaintiff's attorney argues that with the written verification of this oral response, she would be able to cross-examine Rogers more effectively and to impeach his testimony. Plaintiff's attorney also argues that defendant's failure to provide her with the memo in time to prepare for trial was the cause of her late discovery of this evidence because she did not have time to depose Rogers and thus did not know what he would testify relative to the memo.
 
 
 58
 An order for new trial on the ground of newly discovered evidence requires proof of the following elements:
 
 
 59
 (1) The evidence has been discovered since the trial;
 
 
 60
 (2) The evidence could not by due diligence have been discovered earlier by the movant[;]
 
 
 61
 (3) The evidence is not merely cumulative or impeaching; and
 
 
 62
 (4) The evidence is of such nature that it would probably change the result if a new trial is granted.
 
 
 63
 Nickerson v. G.D. Searle & Co., 900 F.2d 412, 417 (1st Cir.1990); see also Duffy v. Clippinger, 857 F.2d 877, 879 (1st Cir.1988). The district court's ruling will only be overturned for an abuse of discretion. Nickerson, 900 F.2d at 416; Duffy, 857 F.2d at 879.
 
 
 64
 The district court found that the evidence could have been discovered during trial by due diligence, that the evidence was merely impeaching and that the admission of the evidence would not, in any event, have probably changed the outcome of the trial. We agree: any one of the grounds stated by the district court was sufficient to negate a new trial.
 
 V. CONCLUSION
 
 65
 In summary, we find the evidence as presented to be sufficient for a reasonable jury to have found that Raymond's Model 75 sideloader was not "unreasonably dangerous at the time of manufacture and sale." We also find that plaintiff's allegations are not sufficient to support an order for a new trial.
 
 
 66
 We affirm the order of the district court denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial. Because counsel for plaintiff briefed an issue that had no basis in the record, we order that he personally shall pay to defendant double appellate costs.
 
 
 
 *
 Of the District of Rhode Island, sitting by designation
 
 
 [1]
 There is no relation between the plaintiff's decedent, Roland Raymond, and the defendant Raymond Corporation
 
 
 [2]
 The pertinent passage reads, "This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."
 
 
 [3]
 Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
 
 
 [4]
 In pertinent part, the text of Section 402A reads: "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused...." (emphasis added)
 
 
 [5]
 As already noted, the feasibility of adding the back plate was stipulated to at the start of the trial
 
 
 [6]
 As stated in the Advisory Committee Notes, "[t]he other, and more impressive, ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety."
 
 
 [7]
 Plaintiff's trial counsel did not represent her on appeal
 
 
 [8]
 Defendant's counsel fairly established that Professor Hagglund was not familiar enough with Raymond Corporation's welding techniques to be able to identify a weld as being Raymond's work. Hagglund, however, never stated that he could identify the welds as being specifically Raymond's, rather he claimed that through examination of the corner post and the sideloader surface he could determine whether or not anything had ever been rewelded to the spot where the corner post was attached at the time of the accident