**UNITED STATES FIDELITY & GUARANTY COMPANY, et al., Plaintiffs, Appellants,**

v.

**BAKER MATERIAL HANDLING CORPORATION, Defendant, Appellee.**

No. 94–2164.

United States Court of Appeals, First Circuit.

Heard June 7, 1995.

Decided Aug. 9, 1995.

---

Michael J. McCormack, with whom Marc LaCasse and McCormack & Epstein, Boston, MA, were on brief, for appellants.

David A. Berry, with whom William L. Boesch and Sugarman, Rogers, Barshak & Cohen, P.C., Boston, MA, were on brief, for appellee.

Before SELYA and CYR, Circuit Judges, and SCHWARZER,* Senior U.S. District Judge.

* Of the Northern District of California, sitting by designation.

CYR, Circuit Judge.

Plaintiffs United States Fidelity & Guaranty Company ("USF & G")[1] and Jennifer Chapman, administratrix of the estate of Russell M. Chapman, Jr. ("Chapman"), challenge district court rulings precluding their introduction of certain evidence at trial and denying their motion for new trial or relief from judgment in a wrongful death action against defendant-appellee Baker Material Handling Corporation ("Baker"). We affirm.

## I

## BACKGROUND

On January 5, 1990, Chapman sustained fatal injuries in a phenomenon known as "rack underride" when he was crushed between a warehouse shelf and the back of the 1979 Baker Moto–Truck model XTR forklift ("XTR") which he was operating. The XTR was discontinued later in 1990 and replaced by the Baker Reach Truck forklift ("BRT"), first manufactured in 1987. Unlike its predecessor, the BRT-design repositioned the steering controls and incorporated vertical rear posts to protect the operator.

Following Chapman's death, USF & G and Jennifer Chapman ("appellants") brought suit in Massachusetts Superior Court, claiming that 1) Baker had breached its duty to warn Chapman's employer of the danger of "rack underride"; and (2) the lack of vertical rear posts in the XTR (i) violated the implied warranty of merchantability and (ii) rendered the XTR-design unreasonably dangerous. Following the removal of the action to federal court, see 28 U.S.C. §§ 1332, 1441(a), Baker responded in the negative to interrogatories designed to disclose whether it had ever been sued for damages arising out of a similar XTR incident and whether it had ever modified an XTR forklift by installing vertical rear posts. Approximately two years later, shortly before trial, Baker again responded in the negative to similar supplemental interrogatories.

As Baker now concedes, its responses were materially incorrect. It had installed vertical rear posts in two XTRs for Boston Edison in 1987, and later that year sold Boston Edison two new XTRs with vertical rear posts. And, for good measure, Baker had been sued in 1985 based on a similar XTR "rack underride" claim which settled in 1989. See DeMarzo v. Baker Material Handling Corp, No. 477122 (Orange Cty.Sup.Ct. filed Dec. 20, 1985) ("DeMarzo").

Baker filed a motion in limine to preclude evidence of its incorporation of vertical rear posts in the BRT-design, asserting lack of relevance and undue prejudice, see Fed. R.Evid. 402, 403. It contended that incorporating posts in the earlier XTR-design would have impeded steering, as well as safe egress by the operator in the event of a crash or rollover. On the other hand, its repositioning of the steering controls in the BRT-design had alleviated the operational impediment and hazard associated with incorporating posts in its XTR-design. Consequently, urged Baker, the BRT-design would be irrelevant to the determination whether the absence of vertical rear posts in the XTR-design created an unreasonably dangerous condition. The motion in limine was granted on the eve of trial.

At trial, Baker incorrectly represented in its opening statement that the evidence would show that the XTR had never been involved in a "rack underride" accident and that Baker had never installed vertical rear posts in an XTR. Although appellants had already learned about the 1985 DeMarzo XTR litigation and Baker's undisclosed XTR modifications, they neither alerted the district court nor mentioned these matters in their opening statement.

During trial, appellants elicited from Manfred Baumann, Baker's vice-president for engineering and the officer in charge of litigation, that company files contained no record of any prior "rack underride" incident involving the XTR forklift and that Baker had never installed vertical rear posts in an XTR, though it was in fact feasible to do so. Whereupon appellants confronted Baumann with depositions taken in the DeMarzo litigation, and with Boston Edison records, indicating that Baumann's testimony on both

---

1. USF & G is the workers' compensation insurance carrier for Chapman's employer.

points was inaccurate, as Baumann was forced to concede.[2]

Notwithstanding their denudation of Baker's discovery lapses, appellants elected not to request sanctions or a continuance to pursue further discovery, choosing instead to capitalize on Baker's "cover-up" in their closing argument. Apparently unimpressed, the jury found for Baker on all three theories of liability; judgment entered; and appellants moved for a new trial, *see* Fed.R.Civ.P. 59(a), or for relief from judgment, *id.* 60(b)(3), alleging prejudice from the order precluding their BRT-design evidence and from Baker's responses to interrogatories.

On appeal, appellants attack the district court judgment, asserting reversible error in the ruling precluding their BRT-design evidence. Their discovery abuse claim forms the basis for the appeal from the denial of their postjudgment motion. Appellants speculate that they were unfairly prejudiced by the inaccurate responses to interrogatories, notwithstanding their decision not to request Rule 37 relief, since it is impossible to determine what would have been disclosed in full discovery.

## II

### DISCUSSION

#### A. *Appeal from the Judgment*

■ The district court order precluding the BRT-design evidence is reviewed for abuse of discretion. *Espeaignnette v. Gene Tierney Co., Inc.,* 43 F.3d 1, 5 (1st Cir.1994) (" 'Only rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect.' " *Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1340 (1st Cir.1988). Notwithstanding this deferential standard of review, the *Espeaignnette* panel reversed a

similar ruling, *Espeaignnette,* 43 F.3d at 8–9, where the issue was whether a lawn-edger design, which made no provision for a protective guard over the cutting blade, was unreasonably dangerous. *Id.* at 4. The defendant-manufacturer conceded that it would be feasible to attach a protective guard, but maintained that normal operation of the edger would be impeded. *Id.* at 6. The district court precluded evidence that a third party had made a business of attaching protective guards to the identical lawn edger model, even though the evidence showed that the modification at issue was "both possible and practical". *Id.* The *Espeaignnette* panel reversed on the ground that the proffered modification evidence was highly probative and entailed no unfair prejudice because, if credited, it directly controverted the defendant-manufacturer's claim that the proposed modification would impede normal edger functioning. *Id.* at 6–8.

■ The superficial similarities between *Espeaignnette* and the instant case are outweighed by more fundamental dissimilarities. First, both cases implicate Rule 403 rather than Rule 407, though for different reasons. *Espeaignnette* noted that Rule 407 has no application to third-party modifications, *id.* at 7; *see also Raymond v. Raymond Corp.,* 938 F.2d 1518, 1524–25 (1st Cir.1991) (Rule 407 applies only to subsequent remedial measures by manufacturer, not by third parties), whereas Rule 407 does not apply to the instant case because the BRT-design modification preceded Chapman's accident. *See id.* at 1523–24 (Rule 407 does not apply to design modifications made prior to accident in litigation) (upholding exclusion under Rule 403). Second, the modification in *Espeaignnette* had been performed on an edger identical to the one which injured the plaintiff, *Espeaignnette,* 43 F.3d at 6, whereas the modification in the instant case was made to the BRT-design, which was substantially dissimilar to

---

2. According to Baumann, the *DeMarzo* litigation file had not been entered on the master-file list until after Baker responded to the initial interrogatories, and the information relating to the XTR modifications made by Baker at the request of Boston Edison had been placed in the Boston Edison client sales file, rather than the XTR file. He testified that there were more than 100,000 client sales files, and that it was not until he had been told of the modifications to the Boston Edison XTRs that he had searched its client sales file. Further, Baumann admitted that Baker's responses to the initial interrogatories had been inaccurate and that he had not reexamined the Baker litigation files before responding to the supplemental interrogatories.

the XTR which injured Chapman. *See also infra* p. 28.

■ The district court found that the BRT was not sufficiently similar to the XTR, a finding we review only for clear error. *Cameron v. Otto Bock Orthopedic Indus., Inc.*, 43 F.3d 14, 16 (1st Cir.1994) (findings of fact integral to evidentiary rulings are reviewed for clear error). Its finding is amply supported. Appellants' own expert testified that vertical rear posts could not practicably be incorporated in the XTR unless it underwent major redesign. Whereas the record revealed that the BRT-design could accommodate vertical rear posts precisely because its steering controls had been repositioned in the operator's cabin so that the posts would not interfere with steering.

The *Raymond* case, *supra*, provides sturdy support for the district court ruling.[3] It involved a claim that a sideloader design was defective for lack of vertical rear posts. *Raymond*, 938 F.2d at 1522. The decedent had been fatally injured by a beam which penetrated the sideloader operator's cabin, *id.* at 1520, and the district court excluded evidence that rear posts were included in a later design that predated the accident. *Id.* at 1522–23. We upheld the exclusionary ruling, with the following explanation: "the introduction of evidence of pre-accident design modifications not made effective until after the manufacture of the allegedly defective product may reasonably be found unfairly prejudicial to the defendant and misleading to the jury for determining the question whether the product was unreasonably dangerous at the time of manufacture and sale." *Id.* at 1524. The *Raymond* logic is no less apt in this case.

Finally, the evidence excluded in the instant case was by no means the most probative available on the ultimate jury issue; viz., whether the XTR-design should have included vertical rear posts. Whereas the best evidence relating to the safety and practicali-

ty considerations involved in *Espeaignnette* had been that a third party was making a business of incorporating a protective guard on the identical edger, the best evidence that the *XTR could accommodate* vertical rear posts was the uncontroverted proof—presented to the jury—that Baker in fact had installed posts in the XTRs it modified at Boston Edison's request. The evidence that posts had been installed in XTRs diminished not only the need to establish their incorporation in the noncomparable BRT-design, but any unfair prejudice from its exclusion. Thus, the district court did not abuse its discretion in concluding that the required Rule 403 balancing tipped decisively in favor of preclusion. *Espeaignnette*, 43 F.3d at 6 (centrality of disputed evidence to party's claim is strong factor in Rule 403 balancing test) (collecting cases).

## B. *Appeal from the Denial of Post-judgment Relief*

■ We review orders disallowing postjudgment relief under rules 59 and 60(b)(3) for abuse of discretion. *Perdoni Bros., Inc. v. Concrete Systems, Inc.*, 35 F.3d 1, 5 n. 5 (1st Cir.1995) (Rule 59); *Fernandez v. Leonard*, 963 F.2d 459, 468 (1st Cir.1992) (Rule 59 and Rule 60(b)(3)); *United States v. Parcel of Land & Res. at 18 Oakwood Street*, 958 F.2d 1, 5 (1st Cir.1992) (Rule 60(b)(3)). The district court rulings that Baker's inaccurate responses to interrogatories neither constituted fraud nor resulted in substantial interference with the preparation and presentation of appellants' case are reviewed for clear error. *Anderson v. Beatrice Foods, Co.*, 900 F.2d 388, 392 (1st Cir.), *cert. denied*, 498 U.S. 891, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990).

■ Appellants argue that the district court abused its discretion by not affording them postjudgment relief based on Baker's slipshod and misleading responses to interrogatories, which denied them a fair trial.[4]

---

**3.** Although *Raymond* involved New Hampshire law, 938 F.2d at 1520, we recently held that its logic applies as well to "design defect" and "failure to warn" claims under Massachusetts law. *Cameron*, 43 F.3d at 18.

**4.** Appellants rely on *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir.1988), for their con-

tention that a district court may grant relief from judgment and a new trial even if the failure to provide requested discovery was inadvertent. Following our remand in *Cryovac*, the district court denied relief from judgment under Rule

Among the available forms of relief from prejudice occasioned by discovery violations are curative measures such as continuances and stays pending compliance, orders tailored to effect issue preclusion, contempt orders, and default judgments. *See R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15–20 (1st Cir.1991) (discussing grounds for Rule 37 sanctions); Fed.R.Civ.P. 37(b)(2), (c).

■ Appellants' claim fails, nonetheless, as they opted to proceed rather than request relief under Rule 37, presumably because the information Baker did not disclose had become known to appellants before or during trial. Moreover, though their gambit proved unsuccessful, there was both method—potential advantage—in their stratagem and little to lose. Since there is even now no concrete suggestion that further discovery would have benefited them, their prospects for obtaining Rule 37 relief appear all along to have been minimal compared with the potential jury impact their "cover-up" claim might reasonably have been expected to occasion.

Thus, appellants' decision to use their hole card in an abortive gambit with the jury plainly waived any claim that their decision to forego Rule 37 relief rendered the trial unfair. The appropriate remedy for parties who uncover discovery violations is "not to seek reversal after an unfavorable verdict but a request for continuance at the time the surprise occurs." *Szeliga v. General Motors Corp.*, 728 F.2d 566, 568 (1st Cir.1984); *see United States v. Diaz–Villafane*, 874 F.2d 43, 47 (1st Cir.) (criminal case), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). Here, of course, there appears to have been no genuine surprise. Nor can appellants plausibly suggest that the district court abused its discretion by declining their postjudgment motion for relief from the unwelcome consequences of their calculated decision. *Ojeda–Toro v. Rivera–Mendez*, 853 F.2d 25, 29 (1st Cir.1988) ("[A] party may not prevail on a Rule 60(b)(3) motion ... where [it] has access to disputed information or has knowledge of inaccuracies in an opponent's

60(b) notwithstanding its finding of *deliberate* discovery abuse. We nevertheless upheld its rul-

representations at the time of the alleged misconduct.") (collecting cases).

## III

### *CONCLUSION*

As the district court did not abuse its discretion in precluding the dissimilar BRT-design evidence nor in denying postjudgment relief under Rules 59 and 60(b)(3), its judgment is *affirmed.*

ing. *Beatrice Foods Co.*, 900 F.2d at 391–92.