August 21, 1995
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 94-2164

UNITED STATES FIDELITY & GUARANTY COMPANY, ET AL.,

Plaintiffs, Appellants,

v.

BAKER MATERIAL HANDLING CORPORATION,

Defendant, Appellee.

 

ERRATA SHEET

The opinion of this Court, issued August 9, 1995, is amended as
follows:

Cover sheet: "David A. Berry" in place of "David W. Berry"

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

 

No. 94-2164

UNITED STATES FIDELITY & GUARANTY COMPANY, et al.,

Plaintiffs, Appellants,

v.

BAKER MATERIAL HANDLING CORPORATION,

Defendant, Appellee.

 

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge] 

 

Selya and Cyr, Circuit Judges, 

and Schwarzer,* Senior U.S. District Judge. 

 

Michael J. McCormack, with whom Marc LaCasse and McCormack & 
Epstein were on brief for appellants. 
David W. Barry, with whom William L. Boesch and Sugarman, Rogers, 
Barshak & Cohen, P.C. were on brief for appellee. 

 

August 9, 1995
 

 

*Of the Northern District of California, sitting by designation.

CYR, Circuit Judge. Plaintiffs United States Fidelity CYR, Circuit Judge. 

& Guaranty Company ("USF&G")1 and Jennifer Chapman, administra-

trix of the estate of Russell M. Chapman, Jr. ("Chapman"),

challenge district court rulings precluding their introduction of

certain evidence at trial and denying their motion for new trial

or relief from judgment in a wrongful death action against

defendant-appellee Baker Material Handling Corporation ("Baker").

We affirm. 

I I

BACKGROUND BACKGROUND 

On January 5, 1990, Chapman sustained fatal injuries in

a phenomenon known as "rack underride" when he was crushed

between a warehouse shelf and the back of the 1979 Baker Moto-

Truck model XTR forklift ("XTR") which he was operating. The XTR

was discontinued later in 1990 and replaced by the Baker Reach

Truck forklift ("BRT"), first manufactured in 1987. Unlike its

predecessor, the BRT-design repositioned the steering controls

and incorporated vertical rear posts to protect the operator. 

Following Chapman's death, USF&G and Jennifer Chapman

("appellants") brought suit in Massachusetts Superior Court,

claiming that 1) Baker had breached its duty to warn Chapman's

employer of the danger of "rack underride"; and (2) the lack of

vertical rear posts in the XTR (i) violated the implied warranty

of merchantability and (ii) rendered the XTR-design unreasonably
 

1USF&G is the workers' compensation insurance carrier for
Chapman's employer.

3

dangerous. Following the removal of the action to federal court,

see 28 U.S.C. 1332, 1441(a), Baker responded in the negative 

to interrogatories designed to disclose whether it had ever been

sued for damages arising out of a similar XTR incident and

whether it had ever modified an XTR forklift by installing

vertical rear posts. Approximately two years later, shortly

before trial, Baker again responded in the negative to similar

supplemental interrogatories. 

As Baker now concedes, its responses were materially

incorrect. It had installed vertical rear posts in two XTRs for

Boston Edison in 1987, and later that year sold Boston Edison two

new XTRs with vertical rear posts. And, for good measure, Baker

had been sued in 1985 based on a similar XTR "rack underride"

claim which settled in 1989. See DeMarzo v. Baker Material 

Handling Corp, No. 477122 (Orange Cty. Sup. Ct. filed Dec. 20, 

1985) ("DeMarzo").  

Baker filed a motion in limine to preclude evidence of 

its incorporation of vertical rear posts in the BRT-design,

asserting lack of relevance and undue prejudice, see Fed. R. 

Evid. 402, 403. It contended that incorporating posts in the

earlier XTR-design would have impeded steering, as well as safe 

egress by the operator in the event of a crash or rollover. On

the other hand, its repositioning of the steering controls in the

BRT-design had alleviated the operational impediment and hazard 

associated with incorporating posts in its XTR-design. Conse- 

quently, urged Baker, the BRT-design would be irrelevant to the

4

determination whether the absence of vertical rear posts in the

XTR-design created an unreasonably dangerous condition. The

motion in limine was granted on the eve of trial.  

At trial, Baker incorrectly represented in its opening

statement that the evidence would show that the XTR had never

been involved in a "rack underride" accident and that Baker had

never installed vertical rear posts in an XTR. Although appel-

lants had already learned about the 1985 DeMarzo XTR litigation 

and Baker's undisclosed XTR modifications, they neither alerted

the district court nor mentioned these matters in their opening

statement. 

During trial, appellants elicited from Manfred Baumann,

Baker's vice-president for engineering and the officer in charge

of litigation, that company files contained no record of any

prior "rack underride" incident involving the XTR forklift and

that Baker had never installed vertical rear posts in an XTR,

though it was in fact feasible to do so. Whereupon appellants

confronted Baumann with depositions taken in the DeMarzo litiga- 

tion, and with Boston Edison records, indicating that Baumann's

testimony on both points was inaccurate, as Baumann was forced to

concede.2
 

2According to Baumann, the DeMarzo litigation file had not 
been entered on the master-file list until after Baker responded
to the initial interrogatories, and the information relating to
the XTR modifications made by Baker at the request of Boston
Edison had been placed in the Boston Edison client sales file,
rather than the XTR file. He testified that there were more than
100,000 client sales files, and that it was not until he had been
told of the modifications to the Boston Edison XTRs that he had
searched its client sales file. Further, Baumann admitted that

5

Notwithstanding their denudation of Baker's discovery

lapses, appellants elected not to request sanctions or a continu-

ance to pursue further discovery, choosing instead to capitalize

on Baker's "cover-up" in their closing argument. Apparently

unimpressed, the jury found for Baker on all three theories of

liability; judgment entered; and appellants moved for a new

trial, see Fed. R. Civ. P. 59(a), or for relief from judgment, 

id. 60(b)(3), alleging prejudice from the order precluding their 

BRT-design evidence and from Baker's responses to interrogato-

ries. 

On appeal, appellants attack the district court judg-

ment, asserting reversible error in the ruling precluding their

BRT-design evidence. Their discovery abuse claim forms the basis

for the appeal from the denial of their postjudgment motion.

Appellants speculate that they were unfairly prejudiced by the

inaccurate responses to interrogatories, notwithstanding their

decision not to request Rule 37 relief, since it is impossible to

determine what would have been disclosed in full discovery. 

II II

DISCUSSION DISCUSSION 

A. Appeal from the Judgment A. Appeal from the Judgment 

The district court order precluding the BRT-design

evidence is reviewed for abuse of discretion. Espeaignnette v. 

 

Baker's responses to the initial interrogatories had been inaccu-
rate and that he had not reexamined the Baker litigation files
before responding to the supplemental interrogatories. 

6

Gene Tierney Co., Inc., 43 F.3d 1, 5 (1st Cir. 1994) ("'Only 

rarely -- and in extraordinarily compelling circumstances -- will

we, from the vista of a cold appellate record, reverse a district

court's on-the-spot judgment concerning the relative weighing of

probative value and unfair effect.'" Freeman v. Package Mach. 

Co., 865 F.2d 1331, 1340 (1st Cir. 1988). Notwithstanding this 

deferential standard of review, the Espeaignnette panel reversed 

a similar ruling, Espeaignnette, 43 F.3d at 8-9, where the issue 

was whether a lawn-edger design, which made no provision for a

protective guard over the cutting blade, was unreasonably danger-

ous. Id. at 4. The defendant-manufacturer conceded that it 

would be feasible to attach a protective guard, but maintained

that normal operation of the edger would be impeded. Id. at 6. 

The district court precluded evidence that a third party had made

a business of attaching protective guards to the identical lawn

edger model, even though the evidence showed that the modifica-

tion at issue was "both possible and practical". Id. The 

Espeaignnette panel reversed on the ground that the proffered 

modification evidence was highly probative and entailed no unfair

prejudice because, if credited, it directly controverted the

defendant-manufacturer's claim that the proposed modification

would impede normal edger functioning. Id. at 6-8.  

The superficial similarities between Espeaignnette and 

the instant case are outweighed by more fundamental dissimilari-

ties. First, both cases implicate Rule 403 rather than Rule 407,

though for different reasons. Espeaignnette noted that Rule 407 

7

has no application to third-party modifications, id. at 7; see 

also Raymond v. Raymond Corp., 938 F.2d 1518, 1524-25 (1st Cir. 

1991) (Rule 407 applies only to subsequent remedial measures by

manufacturer, not by third parties), whereas Rule 407 does not

apply to the instant case because the BRT-design modification

preceded Chapman's accident. See id. at 1523-24 (Rule 407 does 

not apply to design modifications made prior to accident in

litigation) (upholding exclusion under Rule 403). Second, the

modification in Espeaignnette had been performed on an edger 

identical to the one which injured the plaintiff, Espeaignnette, 

43 F.3d at 6, whereas the modification in the instant case was

made to the BRT-design, which was substantially dissimilar to the

XTR which injured Chapman. See also infra p. 8.  

The district court found that the BRT was not suffi-

ciently similar to the XTR, a finding we review only for clear

error. Cameron v. Otto Bock Orthopedic Indus., Inc., 43 F.3d 14, 

16 (1st Cir. 1994) (findings of fact integral to evidentiary

rulings are reviewed for clear error). Its finding is amply

supported. Appellants' own expert testified that vertical rear

posts could not practicably be incorporated in the XTR unless it

underwent major redesign. Whereas the record revealed that the

BRT-design could accommodate vertical rear posts precisely

because its steering controls had been repositioned in the

operator's cabin so that the posts would not interfere with

steering. 

The Raymond case, supra, provides sturdy support for 

8

the district court ruling.3 It involved a claim that a side-

loader design was defective for lack of vertical rear posts.

Raymond, 938 F.2d at 1522. The decedent had been fatally injured 

by a beam which penetrated the sideloader operator's cabin, id. 

at 1520, and the district court excluded evidence that rear posts

were included in a later design that predated the accident. Id. 

at 1522-23. We upheld the exclusionary ruling, with the follow-

ing explanation: "the introduction of evidence of pre-accident

design modifications not made effective until after the manufac-

ture of the allegedly defective product may reasonably be found

unfairly prejudicial to the defendant and misleading to the jury

for determining the question whether the product was unreasonably

dangerous at the time of manufacture and sale." Id. at 1524. The 

Raymond logic is no less apt in this case.  

Finally, the evidence excluded in the instant case was

by no means the most probative available on the ultimate jury

issue; viz., whether the XTR-design should have included vertical

rear posts. Whereas the best evidence relating to the safety and

practicality considerations involved in Espeaignnette had been 

that a third party was making a business of incorporating a

protective guard on the identical edger, the best evidence that

the XTR could accommodate vertical rear posts was the uncontro- 

verted proof presented to the jury that Baker in fact had

 

3Although Raymond involved New Hampshire law, 938 F.2d at 
1520, we recently held that its logic applies as well to "design
defect" and "failure to warn" claims under Massachusetts law.
Cameron, 43 F.3d at 18.  

9

installed posts in the XTRs it modified at Boston Edison's

request. The evidence that posts had been installed in XTRs

diminished not only the need to establish their incorporation in

the noncomparable BRT-design, but any unfair prejudice from its

exclusion. Thus, the district court did not abuse its discretion

in concluding that the required Rule 403 balancing tipped deci-

sively in favor of preclusion. Espeaignnette, 43 F.3d at 6 

(centrality of disputed evidence to party's claim is strong

factor in Rule 403 balancing test) (collecting cases). 

B. Appeal from the Denial of Postjudgment Relief B. Appeal from the Denial of Postjudgment Relief 

We review orders disallowing postjudgment relief

under rules 59 and 60(b)(3) for abuse of discretion. Perdoni 

Bros., Inc. v. Concrete Systems, Inc., 35 F.3d 1, 5 n.5 (1st Cir. 

1995) (Rule 59); Fernandez v. Leonard, 963 F.2d 459, 468 (1st 

Cir. 1992) (Rule 59 and Rule 60(b)(3)); United States v. Parcel 

of Land & Res. at 18 Oakwood Street, 958 F.2d 1, 5 (1st Cir. 

1992) (Rule 60(b)(3)). The district court rulings that Baker's

inaccurate responses to interrogatories neither constituted fraud

nor resulted in substantial interference with the preparation and

presentation of appellants' case are reviewed for clear error.

Anderson v. Beatrice Foods, Co., 900 F.2d 388, 392 (1st Cir.), 

cert. denied, 498 U.S. 891 (1990). 

Appellants argue that the district court abused its

discretion by not affording them postjudgment relief based on

Baker's slipshod and misleading responses to interrogatories,

10

which denied them a fair trial.4 Among the available forms of

relief from prejudice occasioned by discovery violations are

curative measures such as continuances and stays pending compli-

ance, orders tailored to effect issue preclusion, contempt

orders, and default judgments. See R.W. Int'l Corp. v. Welch 

Foods, Inc., 937 F.2d 11, 15-20 (1st Cir. 1991) (discussing 

grounds for Rule 37 sanctions); Fed. R. Civ. P. 37(b)(2),(3). 

Appellants' claim fails, nonetheless, as they opted to

proceed rather than request relief under Rule 37, presumably

because the information Baker did not disclose had become known

to appellants before or during trial. Moreover, though their

gambit proved unsuccessful, there was both method potential

advantage in their stratagem and little to lose. Since there

is even now no concrete suggestion that further discovery would

have benefited them, their prospects for obtaining Rule 37 relief

appear all along to have been minimal compared with the potential

jury impact their "cover-up" claim might reasonably have been

expected to occasion. Thus, appellants' decision to use

their hole card in an abortive gambit with the jury plainly

waived any claim that their decision to forego Rule 37 relief

rendered the trial unfair. The appropriate remedy for parties

 

4Appellants rely on Anderson v. Cryovac, Inc., 862 F.2d 910, 
923 (1st Cir. 1988), for their contention that a district court
may grant relief from judgment and a new trial even if the
failure to provide requested discovery was inadvertent. Follow-
ing our remand in Cryovac, the district court denied relief from 
judgment under Rule 60(b) notwithstanding its finding of deliber- 
ate discovery abuse. We nevertheless upheld its ruling. Beatri- 
ce Foods Co., 900 F.2d at 391-92.  

11

who uncover discovery violations is "not to seek reversal after

an unfavorable verdict but a request for continuance at the time

the surprise occurs." Szeliga v. General Motors Corp., 728 F.2d 

566, 568 (1st Cir. 1984); see United States v. Diaz-Villafane, 

874 F.2d 43, 47 (1st Cir.) (criminal case), cert. denied, 493 

U.S. 862 (1989). Here, of course, there appears to have been no

genuine surprise. Nor can appellants plausibly suggest that the

district court abused its discretion by declining their post-

judgment motion for relief from the unwelcome consequences of

their calculated decision. Ojeda-Toro v. Rivera-Mendez, 853 F.2d 

25, 29 (1st Cir. 1988) ("[A] party may not prevail on a Rule

60(b)(3) motion . . . where [it] has access to disputed informa-

tion or has knowledge of inaccuracies in an opponent's represen-

tations at the time of the alleged misconduct.") (collecting

cases). 

III III

CONCLUSION CONCLUSION 

As the district court did not abuse its discretion in

precluding the dissimilar BRT-design evidence nor in denying

postjudgment relief under Rules 59 and 60(b)(3), its judgment is

affirmed.  

12