Klonoski v. Mahlab, et al.          CV-95-153-M    07/28/97

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Richard Klonoski, Administrator of
the Estate of Jolanta Klonoski,
    Plaintiff

    v.                                    Civil No. 95-153-M

Benjamin Mahlab, M.D.,
Mary Hitchcock Memorial Hospital, Inc.,
and Hitchcock Clinic, Inc.,
    Defendants



**O R D E R**


On May 9, 1993, shortly after giving birth to a healthy baby girl at Mary Hitchcock Memorial Hospital, Jolanta Klonoski died. The certificate of death records the cause of death as ruptured AVM.  No autopsy was performed.  Subsequently, plaintiff brought this medical malpractice action against defendants, alleging that Mrs. Klonoski in fact died as a result of complications proximately caused by defendants' failure to properly diagnose and treat preeclampsia (i.e., a preeclamptic hypertensive bleed). Defendants conceded that some of the obstetric care provided to Mrs. Klonoski fell below acceptable medical standards, but denied that her death was proximately caused by any such malpractice. Instead, they asserted that her death was unforeseeably caused by an unrelated rupture of a pre-existing AVM.

Approximately four years after Mrs. Klonoski's death, a jury returned a verdict in favor of defendants. Following the jury's verdict, plaintiff arranged for the exhumation of Mrs. Klonoski's body, so that an autopsy might be performed and potentially relevant evidence pertaining to the cause of her death gathered. Plaintiff now asserts that the results of that autopsy constitute newly discovered evidence under Fed. R. Civ. P. 60(b)(2), thereby warranting the new trial sought by the estate. Defendants object. The parties have fully briefed this issue and, on July 18, 1997, the court held a hearing, at which counsel presented oral argument and made additional evidentiary proffers.

The parties agree that the four part standard plaintiff must meet in order to obtain relief under Rule 60(b)(2) is as described in Raymond v. Raymond Corp., 938 F.2d 1518, 1527 (1st Cir. 1991). As discussed more fully on the record, the court determined that plaintiff failed to carry his burden, particularly with regard to the second and forth elements of that standard.

A.    Previously Undiscoverable Through Due Diligence.

Plaintiff has not demonstrated that the evidence obtained from the autopsy "could not by due diligence have been discovered

2

earlier by the movant." Id. The court fully accepts plaintiff's religious beliefs as sincerely held, and that his initial decision not to authorize an autopsy was based on his honest belief that no autopsy was needed in light of defendants' attribution of death to a ruptured AVM. But, certainly after suit was brought and after defendants made their position and their supporting expert testimony clear, plaintiff was on notice that an autopsy could yield relevant (perhaps even dispositive) evidence. That potential evidence, a clinical study of decedent's brain tissue, was under plaintiff's exclusive control, available to (and discoverable by) him if he chose to avail himself of it, as amply demonstrated by his ability to obtain it following the jury's verdict. While moral, philosophical, or religious reasons counseled plaintiff against having an autopsy performed prior to trial, other factors also weighed in the decision, and that pretrial decision was necessarily a conscious one. See Plaintiff's Motion for New Trial (document no. 147), at 10 ("During discovery, Dr. Klonoski did not believe (a) that exhuming Jolanta Klonoski's body and conducting an autopsy at that time would produce any useable evidence, or (b) that any such drastic and emotionally trying step was necessary under the circumstances. He assumed that, as a matter of scientific reality, it was simply too late. He

3

_believed that he had assembled ample evidence as to the actual_
_cause of the fatal hemorrhage_, i.e., improperly managed
preeclampsia.") (emphasis supplied).

At this post-trial juncture, however, the only fact that has
changed (other than that relevant evidence obtained from the
autopsy is degraded to some degree) is that the jury has rendered
a verdict in favor of defendants.

Plaintiff seems to assert that, in addition to believing
that he did not need any additional evidence to prove his case,
he failed to fully appreciate the fact that an autopsy, if
performed prior to trial, might be capable of yielding relevant
evidence.  It is, however, important to distinguish between the
discovery of new evidence and the recognition, following trial,
of the potential _significance_ of evidence which, through the
exercise of due diligence, might have been uncovered earlier.  As
the Court of Appeals for the First Circuit has observed:

> [Rule 60(b)(2)] requires newly discovered evidence, as
> opposed to evidence that is merely new.  In order for
> evidence to be newly discovered, the party seeking a
> new trial must be unaware of the existence of the
> evidence before or during the trial.  In this case, the
> appellant himself admits that he was aware, before
> trial, of the [witness's] identity and knowledge
> concerning the accident.  In preparing for trial,
> however, the appellant decided that the cost of

4

> tracking down the [witness] in New York City outweighed the potential benefit of the [witness's] live testimony.  As such, the [witness's] testimony is not newly discovered.  Rather, it is evidence that was not presented to the district court because of the appellant's conscious decision on trial strategy.  Such evidence is not grounds for a new trial.

Parrilla-Lopez v. United States, 841 F.2d 16, 19 (1st Cir. 1988).

Plaintiff's decision not to obtain an autopsy prior to trial was both a tactical one and one informed by his moral and religious beliefs as well.  Because hindsight is exceedingly fine and foresight exceedingly dull, criticism of what at the time was undoubtedly a reasonable and sound judgment under all of the circumstances would be unfair.  Still, it was in fact plaintiff's decision to make, and that decision is not now subject to change simply because the verdict was unexpected and, in hindsight, a different decision might have been better.  Based on the record as presented, and in light of the governing law in this circuit, the court is constrained to conclude that the autopsy evidence could, through the exercise of due diligence, have been discovered and obtained by plaintiff prior to trial.

B.    Effect of the Evidence on a New Trial.

In any event, plaintiff has also failed to demonstrate that "the evidence is of such nature that it would probably change the

5

result if a new trial [were] granted." <u>Raymond</u>, 938 F.2d at 1527. Because the recently examined tissue samples had degraded substantially since the time of Mrs. Klonoski's death, the medical examiner was unable to rule out at least two theories advanced by defendants which were consistent with the jury's verdict, i.e. that: (1) Mrs. Klonoski died from the rupture of a relatively small AVM, entirely unrelated to her preeclampsia; or (2) a small AVM ruptured and bled to a greater degree than it otherwise would have (had her preeclampsia been properly diagnosed and treated in a more timely fashion), but even absent any malpractice the ruptured AVM still would have bled to a degree sufficient to be fatal.

The autopsy evidence obtained after the verdict is not sufficiently definitive or reliable to likely lead to a different verdict. It would be somewhat helpful to plaintiff, but it would still leave the critical liability question in essentially the same posture: dependent in large measure upon which of the equally highly qualified opposing medical experts should be credited. In other words, that a "large" AVM was not detected in the post-verdict autopsy does not make the defense theory of the case significantly less probable so that a new jury would be

6

likely to reach a different conclusion based on that "new" evidence.

## Conclusion

For the foregoing reasons, and for the reasons expressed on the record of the July 18, 1997, hearing, plaintiff's motion for a new trial (document no. 147) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 28, 1997

cc:  Joan A. Lukey, Esq.
     James P. Bassett, Esq.