**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to lst Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

No. 02-2104

LATIN AMERICAN MUSIC COMPANY, INC., AND ASOCIACION DE
COMPOSITORES Y EDITORES DE MUSICA LATINO AMERICANA, INC.,

Plaintiffs, Appellants,

v.

CARDENAS FERNANDEZ & ASSOCIATES, INC.; DAVID MALDONADO, D/B/A
DAVID MALDONADO ENTERTAINMENT; CFDM THEATRICAL PRODUCTIONS, LLC;
PROMOTORES LATINOS, INC.; CENTRO DE BELLAS ARTES CORP.;
CORPORACION PARA EL FOMENTO DE LAS ARTES Y LA CULTURA,

Defendants, Appellees.

SONIDO, INC.,

Intervenor, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Wilma I. Cadilla-Vazquez for appellants.

Clifford James, with whom Miguel J. Rodriguez Marxuach, Fensterstock & Partners LLP, and Rodriguez Marxuach Law Offices, P.S.C., were on brief, for intervenor-appellee.

_____

April 8, 2003

_____

**COFFIN**, **Senior Circuit Judge**.  Plaintiffs-appellants Latin American Music Company ("LAMCO") and Asociacion de Compositores y Editores de Musica Latino Americana ("ACEMLA") appeal the district court's grant of summary judgment to defendants-appellees on all of plaintiffs' copyright claims and its subsequent denial of plaintiffs' motion for reconsideration.  Finding no error in the court's rulings, we affirm.

## I. Background

The facts are largely undisputed.  Plaintiffs are corporations that claim rights in several songs performed as part of a play about composer Hector Lavoe's life ("Quien Mato a Hector Lavoe?"), produced in New York City in 1999 and San Juan, Puerto Rico, in 2000.  The songs were written by Hector Lavoe (the stage name for Hector Perez), by Lavoe with Wilfredo Colon, or by Catalino "Tite" Curet Alonso.[1]

Plaintiffs alleged that defendants, who created or were involved in the production of the play, violated their rights by performing the songs without obtaining licenses from them. Defendants responded that they had obtained valid licenses from the rightful copyright transferee, Fania Publishing Company, through Sonido, Inc.

---

[1]We note that the district court found that one of the songs in which plaintiffs claimed rights, "Todo Tiene Su Final," was composed by Colon alone.  Because the plaintiffs acknowledge having no claims to any songs written by Colon alone, we do not consider this song.

Fania, the original copyright transferee, had entered into Standard Songwriters Agreements ("SSAs") with Lavoe and Alonso in the 1970s and 1980s that assigned Fania copyright interests in five of the six songs at issue ("Paraiso de Dulzura," "Periodico de Ayer," "Pirana," "El Todopoderoso," and "La Fama"). Defendants produced a Certificate of Registration from the U.S. Copyright Office, filed by Fania as the "Copyright Claimant," for the final song, "La Murga."

For each composition, the SSAs encompassed:

> all musical and non-musical rights therein, the title, words and music thereof, (and all literary characters contained therein), the worldwide copyright thereof and the right to secure copyright therein throughout the entire world and to have and to hold the said copyright together with all of their right, title and interest, both legal and equitable therein, including but not limited to the sole and exclusive worldwide publication, mechanical reproducing, and motion picture and television synchronization rights and the right of public performance by any means, and all other rights now known or hereafter to come into existence, subject to the terms of this agreement.

Each SSA was binding on "the respective parties hereto, their respective successors in interest, legal representatives and assigns and . . . cannot be terminated, or amended except by a writing signed by all of the parties hereto."[2]

---

[2]The one SSA executed in the 1980s, by Lavoe, contained slightly altered language. It pertained to the composition "La Fama" and assigned "the title words and music, and all copyrights thereof . . . and all rights, claims and demands in any way relating thereto, and the exclusive right to secure copyright therein throughout the entire world." It applied to successors in interest, but did not require termination by mutual agreement in

-4-

Sonido had obtained copyright licenses for the songs from Valsyn, which owned Fania Publishing, and subsequently leased them to defendants. As evidence of this transfer of rights, defendants provided a series of licensing agreements: an October 1, 1986, licensing agreement between Valsyn and Sonido, wherein Valsyn conveyed to Sonido a license to use the songs at issue while retaining ownership of the copyrights; a renewal of the agreement between Valsyn and Sonido extending its expiration from December 31, 1999, to December 31, 2004; and an agreement between defendant CFDM Theatrical Productions and Sonido dated July 5, 1999, in which CFDM licensed the songs to be used in the play's production.[3]

Plaintiffs suggested that Alonso had sought to terminate the SSAs, producing a 1983 letter from Alonso to Fania, which apparently indicated his desire to end the agreements. With regard to Lavoe's compositions, plaintiffs produced assignments of copyrights they received from Lavoe's son, Jose Perez, after Lavoe died in 1993. Perez registered the copyrights with the U.S. Copyright Office in 1999 and subsequently assigned the copyrights to LAMCO. Lavoe's other two heirs, his daughter and his widow,

---

writing. Nevertheless, the district court made no distinction between the agreements and plaintiffs have not raised this as an issue on appeal.

[3]CFDM was a partnership between Cardenas Fernandez & Associates and David Maldonado Presents, created specifically for the purpose of producing "Quien Mato a Hector Lavoe?" in New York City and Puerto Rico.

were not parties to that assignment. Plaintiffs did not produce any evidence tending to show that any of the SSAs were actually terminated by the requisite mutually signed writing.

The district court granted summary judgment to defendants, concluding that plaintiffs' rights were not infringed upon by the production of the play because defendants had proven they held valid licenses to use the songs. Subsequently, plaintiffs sought reconsideration by the district court. Although defendants neglected to defend the motion for reconsideration, Sonido was granted leave to intervene and contest plaintiffs' motion, which the district court denied. Defendants have not responded to plaintiffs' appeal from the district court judgment, and this court has also granted Sonido the status of intervenor-appellee.

## II. **Discussion**

Plaintiffs appeal from the district court's decisions to stay discovery, grant summary judgment to defendants, and deny plaintiffs' motion to reconsider.

### A. **Stay of Discovery**

Plaintiffs complain that the district court prejudiced their case by staying discovery proceedings while the motion for summary judgment was under advisement. Plaintiffs suggest that they would have sought evidence to refute the legitimacy of Sonido's copyrights and their subsequent licensing to defendants. They further contend that they had claims against defendant Centro de

Bellas Artes Corporation, operator of the theater in Puerto Rico where the play was shown, that they "had not yet begun to litigate" due to the court's stay of discovery.[4] Plaintiffs argue that the district court was in violation of this court's February 2001 order vacating the district court's denial of a preliminary injunction and requiring the court to conduct "further proceedings."

Our review of the record reveals that plaintiffs failed to oppose defendants' motion to stay discovery. Nor did plaintiffs file a request to compel discovery, pursuant to Fed. R. Civ. P. 37, or a motion for further discovery, authorized by Fed. R. Civ. P. 56(f), prior to the court's decision on summary judgment. Had the plaintiffs protested the stay or informed the court of what information they sought to obtain while the court considered the motions at issue, the situation would be vastly different. By choosing to forgo Rule 37 relief, plaintiffs waived any claim of error on appeal. See, e.g., U.S. Fid. & Guar. Co. v. Baker Material Handling Corp., 62 F.3d 24, 29 (1st Cir. 1995) (holding that plaintiffs "plainly waived" claim of unfair trial by foregoing

---

[4]Plaintiffs make a companion argument that their claims against Centro de Bellas Artes were not resolved by the district court's orders and thus the judgment before us is not final. Although Centro de Bellas Artes did not join in the motion for summary judgment filed by other defendants, the court granted summary judgment to all defendants. Thus, there has been a final judgment with regard to all of plaintiffs' claims in this case, including those against Centro de Bellas Artes.

Rule 37 relief in favor of airing "cover-up" claims in front of jury).

## B. **Summary Judgment**

Plaintiffs appeal the court's grant of summary judgment to defendants on several grounds. Most of plaintiffs' arguments were not made until the motion for reconsideration, and as such were forfeited, as explained in the next section. The only preserved claim that plaintiffs make with regard to the court's summary judgment ruling is that the court erred in concluding that under Puerto Rico law Lavoe's son could not unilaterally transfer rights to them.

In their summary judgment motion, defendants argued primarily that they held valid, unrevoked assignments from the songs' composers dating back to the 1970s and 1980s and therefore any assignments to plaintiffs, occurring later in time, were necessarily invalid. Plaintiffs, in their three paragraph argument in response, made two particular points. First, they noted that the original agreement between Valsyn and Sonido ended in December 1999 and thus was not in existence at the time the play was produced, making the licenses granted to defendants from Sonido invalid. Plaintiffs identified this as the "one simple, yet compelling fact, that defeats any possibility of success for Co-defendants' motion for summary judgment." (With their reply, defendants proved this argument meritless by producing the renewal

of the Valsyn-Sonido agreement, which extended its expiration to December 2004.)  Second, plaintiffs suggested that the composers had in fact cancelled their original agreements with Fania, submitting Alonso's 1983 letter in support.

The district court held that defendants had proven a valid chain of transfers of the copyrights from the original transferee to defendants for use in the play.  The court concluded that plaintiffs had not produced evidence to show that the original assignments had been properly terminated, and thus they had no enforceable rights of their own.  Even if they had, the district court further ruled, relying on Colon Gutierrez v. Registrador de Propiedad, 114 D.P.R. 850 (1983), that Lavoe's son, acting alone, did not have the right to convey copyrights to LAMCO.

As the court intimated in its denial of reconsideration, this issue is ultimately inconsequential to the disposition of the case because Lavoe's estate did not include the copyrights.  Pursuant to their terms, the SSAs between Lavoe and Fania did not expire upon Lavoe's death, and having not been terminated via mutual written agreement by Lavoe or his heirs, the copyrights continued to reside with Fania and its successors.  We therefore need not, and do not, consider the merits of plaintiffs' argument that Lavoe's son had a right to unilaterally transfer copyrights.

C. **Motion to Reconsider**

Finally, plaintiffs appeal the district court's conclusion in its denial of reconsideration that they waived two arguments that they profess should have precluded summary judgment. They suggest that the court erred because it failed to recognize disputed issues of material fact and, alternatively, it neglected to consider a legal issue that was dispositive in their favor. Neither of these arguments was made prior to the motion to reconsider. We may reverse the district court's decision only if it was an abuse of discretion. See Tiller v. Baghdady, 294 F.3d 277, 284 (1st Cir. 2002).

**(1) Factual Issues**

Plaintiffs assert that genuine issues of material fact remained concerning defendants' documentary evidence. First, they argue that, because the agreements between Valsyn and Sonido were not produced in original form, their authenticity was questionable. Second, plaintiffs claim that the Valsyn-Sonido agreement was also suspect because it did not reference any particular composition or specific authors, but instead applied to all master recordings that had been released on the "Fania" label. Finally, plaintiffs complain that the original SSAs were not produced and thus the signatures of the composers have not been verified. Because these arguments were not made in plaintiffs' opposition to summary judgment, the district court ruled that they were forfeited.

It is customary to append copies of documents to a summary judgment motion and produce originals only if authenticity is challenged.  Although plaintiffs suggest that they sought to view the original SSAs, no Rule 37 motion to compel was made.  In short, the court did not abuse its discretion in concluding that plaintiffs' contentions about the agreements produced by defendants were untimely.  See Landrau-Romero v. Banco Popular de Puerto Rico, 212 F.3d 607, 612 (1st Cir. 2000) ("It is well-settled . . . that new legal arguments or evidence may not be presented via Rule 59(e).").[5]

**(2) Section 205 of the Copyright Act**

Finally, plaintiffs allude to an allegedly unresolved issue of law that they claim is dispositive of the case.  Plaintiffs argue that because defendants' assignments were not registered or recorded with the Copyright Office, and otherwise failed to meet Copyright Act requirements, plaintiffs' recorded copyrights are superior.  They specifically contend that the provision of the

---

[5]Plaintiffs also assert a genuine issue of material fact in the alleged bad faith of one of the defendants, David Maldonado, in entering into an agreement with Sonido after plaintiffs informed him of their copyright claims.  We assume that plaintiffs are referencing the Sonido-CFDM agreement since David Maldonado had no contract with Sonido, but David Maldonado Presents was part of CFDM, which was party to the agreement with Sonido.  Because plaintiffs did not raise this argument in either the motion for summary judgment or the motion for reconsideration, it was forfeited.  Reviewing for plain error, see Chestnut v. City of Lowell, 305 F.3d 18, 20 (1st Cir. 2002) (en banc) (per curiam), we find none.

-11-

Copyright Act governing conflicting transfers, 17 U.S.C. § 205, applies and dictates an outcome in their favor.

Again, plaintiffs did not make this argument until the motion for reconsideration. They contend that they preserved it, however, by presenting it to the court during previous colloquies that concerned both the instant case and related cases and by raising it before this court in a previous appeal.[6]

We agree with the district court, however, that plaintiffs forfeited this issue. In our review of the record, we find that although plaintiffs made recurrent references to the Copyright Act in general, it was not until their motion for reconsideration that they specified a reliance on section 205. Thus, when deciding the motion for summary judgment, the district court was justified in believing that plaintiffs had decided to place all of their eggs in one basket, disputing the validity of the defendants' original assignments.

---

[6]In our previous order, we directed the district court to consider the merits of plaintiffs' claims in ruling on a request for injunctive relief. Latin Am. Music Co. v. Cardenas Fernandez & Assocs., No. 00-1443, 2 Fed. Appx. 40 (1st Cir. Feb. 23, 2001) ("The copyright claims in this case are complicated, and nothing we say is intended to suggest a view that plaintiff is likely to prevail, although this is likely to be the key issue as to injunctive relief."). Plaintiffs suggest that our order required the district court to specifically consider the section 205 argument. Nothing in that opinion, however, relieved plaintiffs from their burden of informing the district court of the bases on which they opposed summary judgment.

Plaintiffs' claims that they made the section 205 argument in related proceedings, in particular at a status conference held on July 26, 2001, in which multiple cases were discussed, are not verifiable in the record before us.  Only one status conference appears in the record; it was held on July 6, 2001, and reflects discussion of this case only.  The conference notes report that counsel for one of the defendants was "closely following the four main cases involving Latin American Music Co., Inc. (96-2312, 97-2356, 97-2875, 98-1597) and waiting to see who owns what, and who will transfer what, in order to determine how they will proceed. In all probability the Court will appoint a special master for all of these cases."  No indication that substantive arguments regarding section 205 were made is revealed.

In the alternative, plaintiffs contend that this case was "de facto" consolidated with other cases.  As the district court noted in its denial of reconsideration, the record makes plain that plaintiffs labored under this faulty assumption, even though no motion for consolidation was made prior to the motion to reconsider.[7] Even if plaintiffs made their section 205 argument to the court in the related litigation, they were required to reiterate, or at the very least reference, the argument in their

---

[7]In their motion for reconsideration, plaintiffs argued that there were indispensable parties, namely the composers themselves and Sonido, who should be joined.  In the alternative, they suggested that the court should consolidate the case with related pending litigation.

opposition to summary judgment.  Finally, even if plaintiffs made the section 205 argument in their initial appeal, we did not reflect such argument in our opinion, much less direct the district court to consider it in this different phase of the case.  The district court cannot, therefore, be faulted for not considering the argument, never raised directly before it.  Thus, the district court's refusal to consider plaintiffs' belated section 205 argument was not an abuse of discretion.

For the foregoing reasons, the judgment of the district court is **affirmed.**